No. 33,229

Caroline Intfen, *Plaintiff* (George Intfen, Rose Behrens and Mervine Elwell, substituted, *Appellants*), v. George Hutson, *Appellee.*

(65 P. 2d 576)

Opinion filed March 6, 1937.

*Gerald W. Foley,* of Atchison, for the appellants.
*Ralph U. Pfouts,* of Atchison, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action in ejectment, and from a judgment denying her relief the plaintiff appeals.

The petition alleged that in 1904 plaintiff's husband purchased all that part of the north half of the northwest quarter of section 28, township 6, range 21, lying east of the foot of the bluffs, containing twenty acres, more or less, and that she and her husband had since been in possession, paying taxes thereon; that her husband died in 1931, and the plaintiff was the owner of the real estate; that about 1881 there was a series of high stages of water on the Missouri river and the river cut suddenly and violently by avulsion until there were only about four acres of the above-described twenty-acre tract left; that about 1913 the current of the river changed, the water in front of plaintiff's lands became sluggish and began to deposit sand and silt in front of plaintiff's tract and a bar appeared in the river within the boundary of the part of plaintiff's tract that had been submerged; that the bar increased gradually and grew eastward and westward until at the time of filing the petition the west bank of the river was over a mile east of where it had been in 1913; that plaintiff is the legal and equitable owner and entitled to the immediate possession of the accretion land built to the west bank and the above-described bar in front of her tract between lines parallel with her north and south boundary lines and eastward to the Missouri river; that defendant in 1932 entered into possession of the accreted land by virtue of a certain quitclaim deed from one Brockett and her husband, also defendants, and that none of said defendants have any right, title or interest in the accreted land, but unlawfully keep plaintiff out of possession thereof. The prayer was for ejectment.

The other defendants filed disclaimers but defendant Hutson filed an answer denying generally and setting up matters not now important to notice.

A trial was had by a jury which found generally in favor of defendant and answered special questions as follows:

"1. State the farthest distance which the land, that plaintiffs claim was originally the Snelson tract, extended east from the foot of the bluffs prior to 1881. A. Seventy rods, more or less.

"2. What was the length of said land north and south? A. Eighty rods.

"3. How many acres lay east of the bluffs? A. Twenty acres, more or less.

"4. State the distance east of the foot of the Kansas bluffs that the bar now in question began to form at the point at which it was first visible and noticeable. A. Approximately one half mile.

"5. Was the so-called Snelson tract taken away suddenly and as a result of violent and unusual action of the river?   A. In part.

"6. Was the so-called Snelson tract eaten away by the action of the river upon the bank in a manner usual and characteristic of said river?   A. In part."

Plaintiff's motions for judgment notwithstanding the verdict and for a new trial were denied, and she appeals, assigning these two rulings as error.

A brief review of the evidence shows that when the northwest quarter of the above section 28 was patented to Anna Snelson it contained 156.97 acres, and from plats shown in the abstract and counter abstract we learn the shortage was occasioned by the fact that the Missouri river cut off the northeast corner of the quarter section.   The north half of the northwest quarter is intersected a little to the west of the middle by a line of bluffs running generally north and south, and prior to 1881 the portion east of the bluffs contained from 20 to 40 acres.   While there was some dispute as to how rapidly it occurred, about 1881 to 1883 the river cut to the westward so that the portion east of the bluff remaining unsubmerged was a strip alleged in the petition to contain four acres. The evidence as abstracted does not specify this acreage.   About 1913 a bar commenced to form in the Missouri river east from plaintiff's land.   There is dispute in the evidence as to whether it started within the boundaries of the original lines of the north half of the northwest quarter or eastwardly therefrom, but there was evidence, as found by the jury, that it began to form at a point one half mile east of the bluffs, which would have been approximately one quarter of a mile east of the original eastern boundary of plaintiff's lands as covered by the patent and subsequent conveyances.   This bar continued to grow and ultimately extended westward until it reached the eastern boundary of a slough which from about 1883 represented the west bank of the river and the eastern edge of plaintiff's land.   One Ingalls put some buildings on the bar near where it commenced to form, and thereafter one Ball and one Asberry occupied it.   The dates and length of occupancy are not shown.   About 1932 defendant went into possession, repaired the house, built a barn, cleared one hundred acres of willows and fenced some of the lands. At the time of the trial he had paid taxes on the land for three years.

From the above review it can be seen there was substantial evidence to support the jury's answers to the special questions.   Appellant filed no motion to set aside any answer, but she contends that under the answers made she is entitled to judgment.

In the briefs of both parties, our attention is directed to *Fowler v. Wood,* 73 Kan. 511, 85 Pac. 763, where an exhaustive exposition of the law with reference to avulsion, erosion, etc., is made. Each party is able to quote therefrom statements which tend to support his claim there was or was not avulsion. Appellant contends the answers to special questions 5 and 6 are that the loss of land from her tract was caused partly by avulsion and partly by erosion, and that being caused by avulsion she did not lose title to her submerged real estate, and that when later reliction occurred, that is, when the course of the river changed and her lands reappeared above water level, that she became entitled thereto, as well as to all accretions which were made. We do not find it necessary to repeat what is said in *Fowler v. Wood,* supra, about what constitutes avulsion and what erosion. Even though it be conceded that plaintiff's loss of land was occasioned by avulsion, and it is here noted the jury did not so find, and also that there was evidence to the contrary, in order for plaintiff to become the owner of the reappearing land, that land must have reappeared within the limits of the land taken away by avulsion. Simply because an island or bar appeared in the river bordering plaintiff's land is not sufficient; it must have appeared within the original boundaries of plaintiff's lands as they existed before the avulsion took place. In this case, the evidence showed that after the loss of land in 1881 to 1883 the east boundary of plaintiff's land remained unchanged. About 1913 a bar started to form in the river to the east of plaintiff's land. This bar was not within the original boundaries of plaintiff's land as they existed when the patent was issued or at any time thereafter. The evidence showed, and the jury found, in answer to special question 4, that the bar commenced to form approximately one half mile east of the bluffs, which would be approximately one quarter of a mile east of the east boundary of plaintiff's tract when it existed in its largest acreage. This bar gradually grew in other directions, also, and it extended westward until the accretions thereto brought the western edge of the island thus formed to the eastern boundary of plaintiff's lands as marked by the slough to which reference has been made. The specific facts as found by the jury, together with others shown by the evidence, which are consistent therewith and with the general verdict, are to the effect that the island arose outside of any boundary of plaintiff's lands; that the accretions were to that island and not to plaintiff's lands bordering on the river.

The situation thus disclosed is controlled by *Fowler v. Wood,* supra, paragraphs 5 and 6 of the syllabus reading as follows:

"New formations arising from the bed of a river belong to the owner of the bed, and new formations added to a bar or an island in the channel of a river by the process of accretion or reliction belong to the owner of the island or bar.

"In order to effect a change of boundary, formations resulting from accretion or reliction must be made to the contiguous land, and must operate to produce an expansion of the shore line outward from the tract to which they adhere."

Under the facts and the law applicable thereto, plaintiff's east boundary line was the slough to which reference is made. Although the pleadings do not specify any boundaries in which any reference is made to the slough, in appellee's brief it is stated:

"Appellee claims no part of said slough or anything west thereof."

The prayer of the petition was for possession of the claimed accretion land, the issue was found in favor of the defendant, the answers to the special questions did not compel judgment for plaintiff, and the trial court's ruling in denying plaintiff's motion was correct.

We shall notice briefly other contentions of the appellant. She argues that she is entitled to a judgment because defendant has no title to the land in controversy. In ejectment, plaintiff must recover on the strength of her title and not on the weakness of the defendant's title. Plaintiff has no title, legal or equitable, to the so-called accretion lands in controversy, unless by reason of a deed issued by the sheriff to her husband as the result of tax foreclosure proceedings. It was issued in 1918 and describes as the land conveyed the north half of the northwest quarter of 28-6-21 "east of the bluff." There is no showing as to the year the land was assessed, whether before or after 1913, nor what land was included. In any event, the description was the same as that in Intfen's deed from Moore in 1904, a time when, according to the evidence, the eastern boundary was the above-mentioned slough. Passing by the question whether in effect Intfen only redeemed by purchasing at the tax sale (see *Pomeroy v. Graham County,* 6 Kan. App. 401, 50 Pac. 1094), it is quite clear the description in the deed was not intended to and did not cover the bar or island in the river east of plaintiff's lands, for the evidence shows that when the bar started to form in 1913, and for a long time thereafter, there was a channel

of water between plaintiff's east boundary and the bar or island in the river, and that the accretions were to the bar or island and not to plaintiff's lands. Under the facts, the tax deed did not cover the lands in controversy. It is not necessary that we demonstrate just what title defendant had. His proof showed he was in possession and had been for some years; that he had cleared 100 acres of the land and made it tillable, had made improvements and had paid taxes. His efforts to show title through Ingalls, Ball and Asberry, previous occupants, were stopped by objections of appellant, who now contends that under *Douglass v. Ruffin*, 38 Kan. 530, 16 Pac. 783, she has color of title to the land involved, and as against defendant's mere possession she has paramount title and is entitled to judgment. The difficulty with this contention is that it is based on a premise which does not exist; she has no title or color of title to the land from which she seeks to eject the defendant.

In *Urschel v. Davis*, 125 Kan. 169, 263 Pac. 1074, it was held that plaintiff in an ejectment action must show that he has some kind of estate in the property, and that his title is paramount to that of defendant. In *Haseltine v. Nuss*, 97 Kan. 228, 155 Pac. 55, it was held that plaintiff must recover on the strength of his own title and not on the weakness or want of title of defendant. In *Robertson v. Howard*, 83 Kan. 453, 112 Pac. 162 (reversed on other grounds in *Robertson v. Howard*, 229 U. S. 254, 33 S. Ct. 854, 57 L. Ed. 1174), it was said:

"As between two parties neither of whom has a right to the possession of real estate of which one is in possession, the other cannot oust him therefrom." (Syl. ¶ 2.)

Plaintiff's contention that she is entitled to judgment because she has the paramount title cannot be sustained.

Appellant further contends the trial court erred in the giving of instructions and the refusal to give others requested. We have examined these instructions. No good purpose would be subserved by setting them out in this opinion. The instructions given were proper. Insofar as the requested instructions were proper, their substance was included in those given.

The appellant requested the trial court to submit two special questions to the jury and the refusal to do so is assigned as error. She sought to have the jury say whether defendant had title or color of title and, if so, what it was. Whether defendant had title or color of title was a question of law. In addition, it having been

shown plaintiff had no title or color of title, it became immaterial what defendant's title was. The refusal to submit the questions was not error.

And finally, appellant complains that counsel for defendant, in his remarks to the jury, went outside the record and made statements prejudicial to the plaintiff. On objection made, the court advised the jury it should pay attention only to the testimony, the plain inference being it should pay no attention to anything else. An examination of the record, as abstracted, does not lead to the conclusion there was any prejudicial error.

The judgment of the lower court is affirmed.