No. 38,598

JACK WHITLOCK and ELLA A. WHITLOCK, his wife, MELVIN KING and GAIL M. KING, his wife, LEONARD FRIEBUS and GEORGIA FRIEBUS, his wife, DONALD E. WYNKOOP and LUCILLE WYNKOOP, his wife, RICHARD E. MARTIN and JUNE L. MARTIN, his wife, C. F. LITSEY and MAXINE A. LITSEY, his wife, *Appellants*, v. ROY SCHOEB and BYRDIE SCHOEB, his wife; U. R. DRAIN and ORVAL A. BECKEL, as individuals, and as a copartnership doing business as DRAIN & BECKEL AUTO SERVICE, *Appellees*.

(244 P. 2d 189)

Opinion filed May 10, 1952.

*Carl A. Bell, Jr.,* of Wichita, argued the cause, and *Grey Dresie,* also of Wichita, was with him on the briefs for the appellants.

*Ferd E. Evans, Jr.,* of Wichita, argued the cause, and *Lester L. Morris* and *Verne M. Laing,* both of Wichita, were with him on the briefs for the appellees, Roy Schoeb and Byrdie Schoeb.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from an order sustaining a motion to quash constructive service of process upon two of the named defendants.

The basic question involved is whether constructive service of process is valid in an action wherein the relief sought is an injunction prohibiting nonresident landowners from committing a nuisance in violation of restrictive covenants imposed upon real estate in this state.

The factual background and the nature of the relief sought, as disclosed by the petition, are as follows:

Defendant Roy Schoeb was the owner of Westborough Addition to the city of Wichita and in 1937 caused it to be divided and platted into lots and streets. Shortly thereafter, and for the purpose of inducing others to purchase lots, he and his wife, also a defendant, executed a dedication of restrictions on the use and occupancy of all of the lots located within the addition. These restrictions were the usual type enacted for the purpose of protecting property values and, among other things, provided against noxious or offensive trades being carried on or anything which might become an annoyance or nuisance to the neighborhood; that on any

corner lot no structure was to be permitted closer than ten feet from the side street line, and that any business building erected where allowed in such addition was to be properly equipped with a septic tank for the disposal of sewage until such time as connections might be made with a suitable sewer system. They further provided that all persons owning lots in the addition would have the right to prosecute any proceeding at law or in equity against any person or persons attempting to violate any of such restrictions in order to prevent him or them from doing so. This dedication of restrictions was duly filed for record and was in full force and effect at the time this action was commenced.

Plaintiffs are property owners who purchased lots in the addition from defendants Schoeb in reliance upon the general plan and scheme provided by the dedication of restrictions for the improvement and development of the addition. As lot owners they have improved their respective properties and have invested their time, labor and money in them to the extent that at the present time their aggregate value is in excess of $50,000.

In July, 1950, defendants Schoeb, who still owned a portion of one lot in the addition, entered into a written lease whereby they leased the same to defendants Drain and Beckel, doing business as Drain & Beckel Auto Service, for a term of five years.

Drain and Beckel, as lessees of the property in question, which was a corner lot, and with the consent and approval of the Schoebs, erected a garage building thereon approximately 2.1 feet from the side street line, and used the building and premises in their business of junking and scrapping automobiles. In so doing they burned worthless portions of scrapped vehicles which in turn caused noxious odors and smoke to drift across the properties of plaintiffs, and operated their business into the late hours of night in a loud and noisy manner thus creating a disturbance in the neighborhood, all in violation of the restrictions heretofore referred to. At the rear of the garage building they maintained a common and crude cesspool for the disposal of sewage, also in violation of the restrictions.

The prayer of the petition seeks a permanent injunction enjoining the Schoebs, Drain and Beckel from violating the restrictions in the manners heretofore related.

Defendants Drain and Beckel reside in Sedgwick county, but in the meantime defendants Schoeb had moved to Alfalfa County, Oklahoma. We are not concerned with the service of process upon

Drain and Beckel. Pursuant to the filing of an affidavit for personal service out of the state a summons was issued directed to the sheriff of Alfalfa County, Oklahoma, for the Schoebs. Personal service of summons was made upon them in that county.

The Schoebs, in a special appearance, moved to quash the service upon them on the ground that they were nonresidents of Kansas; that they had not been served with process within the state; that the only service attempted to be made upon them was service of a foreign summons in Alfalfa County, Oklahoma, and that the action was not one in which either publication service or service of foreign summons was authorized by law.

This motion to quash was sustained and plaintiffs have appealed from that ruling.

As all proceedings up to and including the service of process in question were had prior to the effective date of section 1, chapter 349, Laws of 1951 (now appearing as G. S. 1951 Supp., 60-2525), we are not concerned with what effect, if any, that amendment has on the question before us.

In a summary way it may be stated that plaintiffs' contentions are that the action, being one to enforce restrictive covenants, although equitable in nature, is a proceeding *in rem,* and that as a proceeding *in rem* it is one of those cases in which constructive service of process may be had on nonresident defendants under the provisions of G. S. 1949, 60-2525. In support thereof they argue the action is one to determine, enforce and bar defendants Schoeb from a real property interest for the reason that restrictive covenants such as those under consideration are regarded as an interest in real property and are to be enforced as such, and authorities are cited to the effect that such restrictive covenants are deemed to be property rights in the land restricted so as to enable the owners thereof to enforce them.

Plaintiffs recognize and concede, however, that if they are allowed to bring defendants Schoeb into the action by service of foreign summons upon them outside the state they would not be entitled to recover a judgment against them *in personam* whereby the court's injunction could be enforced by the exercise of its contempt powers outside of Kansas. They contend that unless they are permitted to maintain the action and to bring defendants Schoeb into court on constructive service of process they are without adequate relief in that there would be nothing to prevent the

Schoebs from leasing the premises in question to other persons who might commit and maintain the same nuisances as it is alleged the present lessees, Drain and Beckel, are committing and maintaining.

In support of the lower court's ruling, defendants Schoeb contend that notwithstanding the fact restrictive covenants are involved, the action, being for purely injunctive relief, is strictly one *in personam* rather than *in rem;* that there can be no constructive service of process without express statutory authorization, and that the statute (G. S. 1949, 60-2525) does not authorize constructive service in such a case.

Counsel for both sides to this appeal have furnished us with excellent briefs covering the whole field of law applicable to the question under consideration. All contentions and authorities have been noted and given careful consideration, but in our opinion, and in the interest of brevity, all need not be mentioned.

G. S. 1949, 60-2525, enumerates those cases in which constructive service—that is, service by publication—may be made.

G. S. 1949, 60-2529, provides that in all cases where service by publication is proper, personal service of a summons may be made out of the state, and that such service when made and approved as provided by the section shall have the same force and effect as service by publication and no other or greater force or effect. In other words, the out-of-state personal service of summons here under consideration was in legal effect the same as publication service.

Among other things, 60-2525 provides that publication service may be had:

"In actions which relate to or, the subject of which is real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a nonresident of the state or a foreign corporation."

That section further provides that publication service may be had in actions brought under G. S. 1949, 60-501, where any or all of the defendants reside out of the state, or where the plaintiff with due diligence is unable to make service of summons upon such defendant or defendants within the state.

60-501 provides that:

"Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section: *First—*

For the recovery of real property, or of any estate or interest therein, or for the determination in any form of any such right or interest, or to bar any defendant therefrom.   .   .   ."

60-2525 further provides that service by publication may be had in actions brought under G. S. 1949, 60-510, where any or all of the defendants reside out of the state, or where the plaintiff with due diligence is unable to make service of summons upon such defendant or defendants within the state.

60-510 provides that:

"An action to compel the specific performance of a contract for the sale of lands situated in the state of Kansas may be brought in any county where the land or any part thereof is situate, or in any county where the defendant or any one of the defendants may reside."

Obviously this action is not one to compel the specific performance of a contract for the sale of lands ( 60-510), and therefore the matter resolves itself into the question whether it can be said to fall within the other above-quoted provisions.

As we approach the problem it first becomes necessary to determine the nature of the relief sought. Defendants Schoeb are the grantors of plaintiffs and the lessors of defendants Drain and Beckel. The latter two defendants are the ones actually committing and maintaining the nuisances, allegedly with the consent and approval of the Schoebs. While it has often been said that "the prayer is no part of the petition" we look to it, and particularly in a case of this kind, to ascertain the nature of the relief plaintiffs are seeking. Without quoting it and without repeating what has already been said, plaintiffs seek an order of the court permanently enjoining the four named defendants from committing and maintaining the described nuisances in violation of the restrictions common to the entire addition by virtue of the dedication thereof by defendants Schoeb. It is clear that the action is not one "for the recovery of real property, or of any estate or interest therein, or for the determination in any form of any such right or interest, or to bar any defendant therefrom," as provided by 60-501, *supra.* It seems equally clear that it is not an action where the relief demanded consists wholly or partly in excluding any defendant from any interest in real or personal property, as mentioned in the quoted portion of 60-2525, *supra.* Title to the property in question is in no way involved—merely the use to which it is being put.

We have no difficulty in concluding that the action is one purely for injunctive relief—that is, to restrain and enjoin the defendants

and each of them from using the property in such manner as to constitute a nuisance in violation of the restrictions.

The question, therefore, resolves into whether constructive service on a nonresident is valid in an action for injunctive relief. Inherent in that question is the further question whether such an action is one *in personam* or *in rem*.

The general rule as stated in 28 Am. Jur., Injunctions, is:

"Injunction is distinctly an equitable remedy, the power to grant which stands forth as a distinct head of equitable jurisprudence and the principal and most important of its issued processes. . . . The relief depends upon broad principles of equity and may, in the discretion of the court, be granted or denied in accordance with the justice and equity of the case." (§ 3, p. 198.)

"Injunction is distinctly an equitable remedy, and the well-established principle underlying equity jurisdiction that it is exercised in personam, and not in rem, is fully applicable. The remedy is strictly in personam, and the decree operates and is enforceable against the individual and not against property, except where by statutory authorization the decree is so framed as to act on property. . . . In no case, of course, will injunction issue against a nonresident or one not within the jurisdiction of the court." (§ 4, p. 199.)

In 42 Am. Jur., Process, we find the following:

"Since, originally, equity always acted in personam, all suits in equity were in personam, and there was no such thing as a suit in rem or quasi in rem in equity. But by statute the jurisdiction of equity courts has generally been extended so as to make equity decrees operate in rem, and this has removed the objection that inasmuch as equity can act only in personam no suit in equity can be characterized as in rem or quasi in rem so as to sustain jurisdiction by constructive service. A state, in the exercise of its power to provide methods for the determination of title to land within its borders, may give to equity decrees, by legislative acts, the effect of judgments in rem, so that jurisdiction to render them may be based upon service of process by publication. Accordingly, while suits in equity to compel specific performance of contracts . . . are actions in the nature in personam with respect to which a court of equity, in the absence of any statutory change, can obtain jurisdiction over a nonresident only upon the basis of personal service of process, it is well established that the legislature may authorize constructive service of process upon nonresidents in such suits, and thus confer upon the court jurisdiction to render a binding decree." (§ 85, p. 73.)

An illustration of the rule last quoted is to be found in our own decisions and legislative enactments. The early case of *Close v. Wheaton*, 65 Kan. 830, 70 Pac. 891 (decided in 1902), was an action of specific performance to compel the execution of a deed to land situated in Trego county. The action was brought in that county, but the defendants, of whom performance was asked, were nonresidents of Kansas, and other defendants of whom re-

lief of an incidental character was asked, though residents of the state, were nonresidents of the county. Objections to the jurisdiction of the court over the persons of the defendants were made and overruled. Judgment was rendered for plaintiffs, and on appeal to this court it was held that an action to compel the specific performance of an agreement to convey land, if the defendant's obligation is in contract only, is an action *in personam* and must be brought in the county where the defendant resides, and not of necessity in the county where the land is situated.

In 1903, by legislative enactment (section 1, chapter 384, Laws of 1903), an action to compel the specific performance of a contract for the sale of lands situated within the state was classified as being local as well as transitory, thus authorizing constructive service in a proper case. That enactment, as amended (section 56, chapter 182, Laws of 1909), now appears as 60-510, *supra,* and is one of those cases in which constructive service may be had under the provisions of 60-2525. (See also, *Tinkler v. Devine,* 159 Kan. 308, 315, 154 P. 2d 119.)

In the recent case of *Connell v. Kanwa Oil, Inc.,* 161 Kan. 649, 170 P. 2d 631, which was an action for the specific performance of an alleged written agreement for the sale of an undivided interest in an overriding royalty interest in oil and gas produced on real estate located in Russell county, the plaintiff sought to obtain service by publication in the district court of that county on the defendant, a foreign corporation and owner of the royalty interest. A motion to quash the publication service was sustained and plaintiff appealed. It was held that as the royalty interest in question was not land within the meaning of that term as used in 60-510, the action was one *in personam* and, unless instituted in conformity with G. S. 1935, 17-509 (now G. S. 1949, 17-509, but not here material), must be brought in the county where the defendant resides or may be summoned; that no jurisdiction of the defendant was obtained by publication service, and that the motion to quash such service was properly sustained. The opinion reviews a number of our earlier decisions, including the Close case, *supra,* and those decided subsequent to the enactment of 1903, above referred to.

A case somewhat analogous in principle to the instant case is that of *Howard v. Berryman,* 143 Okla. 258, 288 Pac. 605, reported at 69 A. L. R. 1035. Howard, the plaintiff, resided in Ellis County,

Oklahoma. Defendant Berryman was a resident of Clark County, Kansas, while the other defendant, Davidson, was the managing agent of and had charge of Berryman's business in Ellis County, Oklahoma. The petition alleged that Berryman, by such managing agent, had built a fence enclosing a pasture of approximately 12,000 acres of land in the latter county, and that plaintiff was the owner of 480 acres within such enclosure which he was financially unable to fence; that Berryman, through his managing agent, had turned about 700 head of cattle into the pasture and that they were destroying the grass, hay and forage thereon; that defendants had refused to pay to plaintiff his damages and remove the cattle from the land, and that plaintiff had no adequate remedy at law. Plaintiff's action, which was commenced in Ellis County, Oklahoma, was for an injunction against each of the defendants to restrain their further acts in pasturing his land in the manner complained of.

Personal service of summons was had on Davidson in Ellis County, Oklahoma, but the return showed that Berryman was not within the county. Pursuant to the filing of an affidavit for service of a foreign summons Berryman was served personally in Kansas. He appeared specially and moved the court to quash the summons as to him. This motion was sustained and plaintiff appealed.

All that was said in the opinion of affirmance will not be detailed, but the reasoning of the court was based upon the proposition that an injunction operates *in personam,* is enforceable against the individual and not against property, and that the statute did not authorize constructive service upon a nonresident in such an action. In passing, it should be noted that the Oklahoma statute in question was "borrowed" from Kansas, and that in such respects as are material to the question before us was identical to the provisions of our code relating to constructive service.

See also *Ward v. Benner,* 89 Kan. 369, 131 Pac. 609, where it was said:

"The issuance of an injunction is not a ground for constructive service." (p. 373.)

The sum and substance, then, of what has been said is this:

This action was one purely for injunctive relief—to enjoin defendants from committing and maintaining the nuisances in violation of the restrictive covenants. Title to the property was in no way involved, and neither was it sought to bar any defendant from any interest therein. Only the use to which it was being put was in

issue. The decree would be enforceable only against individuals—the defendants. The action was strictly one *in personam,* not *in rem.* Constructive service is permitted only in those cases enumerated in 60-2525, and, this action not being one of them, the service in question was invalid and was properly quashed.

The judgment of the lower court is therefore affirmed.