No. 40,440

RAY and MARIE SMITH, *Appellants* and *Cross-Appellees*, v. CLAUD B. and LOTTIE E. HARRIS, *Appellees* and *Cross-Appellants*.

(311 P. 2d 325)

Opinion filed May 11, 1957.

*Herbert L. Lodge,* of Olathe, argued the cause; *Howard E. Payne,* of Olathe, *Seth S. Lacy* and *J. M. Loomis,* both of Kansas City, Missouri, were with him on the briefs for appellants.

*John Anderson, Jr.,* of Olathe, argued the cause; *James B. Pearson* and *John C. Gage,* both of Mission, were with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is the second appearance of this action in this court. (See *Smith v. Harris,* 178 Kan. 183, 284 P. 2d 611.)

This action arose over a driveway easement dispute in which the plaintiffs below, owners of the dominant estate, sought to enjoin the defendants, owners of the servient estate, from interfering with their use of the easement. The trial court denied a permanent injunction, quieted title to the defendants' property and awarded damages for the issuance of a temporary injunction. The plaintiffs appeal from the judgment against them and from all other adverse rulings. The defendants appeal from the finding and all adverse rulings of the trial court that the easement was not terminated by adverse possession.

The issues presented at the previous appearance of this action before the court were based upon the pleadings. Reference is made to that opinion for a factual statement of the pleadings and it will be unnecessary to reiterate them here, except to state that the petition prayed for a temporary injunction until the merits of the case

could be heard in full, or "the defendants can show cause, if any they have, why this temporary injunction should not be made permanent."

The appellants and cross-appellees, Ray and Marie Smith, will be referred to throughout this opinion as plaintiffs, and the appellees and cross-appellants, Claud B. and Lottie E. Harris, will be referred to as the defendants, as they appeared in the court below. It should be noted that Lottie E. Harris, formerly Lottie E. Beck, purchased the property owned by the defendants in 1931 and married her present huband, Mr. Harris, in 1944.

For purposes of clarity the two properties involved in this action are situated adjacent to each other in Johnson County, Kansas, fronting 49th Street Terrace which is on the north. The plaintiffs' property is situated immediately to the west of the property owned by the defendants and is designated as "Tract A". The defendants' property is designated as "Tract B". The driveway over which the dispute arose is approximately 8 feet wide and 103 feet long extending from 49th Street Terrace to the south between the two residences constructed, one on Tract A and one on Tract B, and at the rear of said houses branched into a "Y" which led to the basement garage on the southeast corner of the house on Tract A, and to the basement garage on the southwest corner of the house on Tract B. This driveway was made of concrete and was constructed by one E. A. Brinton, who was the common owner of these properties in the year 1927. This driveway was located entirely upon Tract B.

On June 7, 1927, Brinton executed a mortgage to the Prudential Insurance Company of America covering Tract A. On the 29th day of August, 1927, Brinton conveyed Tract A by warranty deed to Hughes, who on September 13, 1928, conveyed said tract by warranty deed to Ulrey.

On September 17, 1928, Brinton, still the owner of Tract B, which is now the defendants' property, entered into a written easement designated as "Driveway Agreement" with Ulrey and the same was recorded on the 19th day of September, 1928, in the office of the Register of Deeds of Johnson County, Kansas. Insofar as is material herein this written driveway agreement after reciting a valid consideration and describing the properties reads:

"The right of way or easement thus created and granted is so created and granted for use by the parties of the second part, their heirs and assigns, as a

joint driveway for pleasure vehicles only. It is expressly understood and agreed that neither parties to this agreement shall so use said driveway so as to prevent the free and uninterrupted use of said driveway by the other parties for the purpose for which it is intended. Unless otherwise agreed upon, the driveway shall be of solid concrete construction and the cost of maintaining said driveway in a reasonably good state of repair, shall be borne equally by the parties hereto, except however, in case where damage is done to said driveway by the negligence of either party hereto, or any person or persons in their behalf or under their control, then said damage shall be repaired and the expense of the repairs shall be borne by the parties causing the same.

"Either party hereto shall have and is hereby given the right to do such maintenance and/or repair work to said driveway as may be necessary to maintain the same in reasonably good condition and the other party shall be responsible and liable for one-half of the cost thereof.

"The right of way or easement herein granted shall be deemed to be a covenant running with the title to the land now owned by the respective parties hereto and shall be binding upon the parties hereto and upon their heirs and assigns; provided however, that this easement may be cancelled by mutual agreement of the parties hereto, or their heirs and assigns."

Among the recitals in the description of the property in the written driveway agreement is the following:

"A right-of-way or easement is also hereby granted over and along so much of Lot Seven (7) in Block Four (4) of Westwood Hills, [Tract B] now owned by the parties of the first part, *as may be necessary* to permit the parties of the second part to pass from the easement herein created and above described to the entrance of the garage now constructed on that part of Lot Seven (7) in Block Four (4) owned by them. [Tract A]." (Emphasis added.)

On the 31st day of January, 1931, Brinton conveyed Tract B by warranty deed to the defendants herein. This deed was duly recorded and specifically recited among other things that the conveyance was:

"*Subject to, but conveying all interest in the easement for driveway* recorded in Misc. Records 16, page 158, in the office of the Register of Deeds, Johnson County, Kansas. Subject to all other restrictions, reservations and easements now of record." (Emphasis added.)

On the 15th day of January, 1932, the Prudential Insurance Company brought suit to foreclose its mortgage on Tract A (now plaintiffs' property) against Ulrey and the other parties who were predecessors in title and/or affected by the mortgage on Tract A, but the defendants were not mentioned as parties defendant therein.

Neither the foreclosure petition nor any of the proceedings therein made reference to the written easement of record designated as a driveway agreement.

Pursuant to the foreclosure action judgment was entered, wherein

all of the parties to the action were barred from claiming any right, title, interest, estate or equity in and to the property foreclosed, or any part thereof, and Tract A was sold at a sheriff's sale, whereupon in due course the sheriff's deed was executed and recorded on the 1st day of June, 1934, conveying Tract A to the purchaser, the Prudential Insurance Company of America, mortgagee. The sheriff's deed specifically described Tract A and among other things recited:

"Together with all and singular, the tenements, hereditaments and *appurtenances thereunto belonging,* or in any wise appertaining." (Emphasis added.)

Tract A was subsequently conveyed by the Prudential Insurance Company on December 18, 1939, to the Jacksons by a deed which recited in the habendum clause the following:

"To Have and to Hold, the premises aforesaid, with all and singular the *rights, privileges, appurtenances, and immunities thereunto belonging* or in anywise appertaining . . ." (Emphasis added.)

Thereafter, on the 13th day of May, 1944, the Jacksons conveyed Tract A to the Andersens by warranty deed which recited among other things the following:

"To Have and to Hold the Same, together with all and singular, the tenements, hereditaments, and *appurtenances thereunto belonging or in anywise appertaining,* forever." (Emphasis added.)

On the 26th day of May, 1949, the Andersens conveyed Tract A by warranty deed to the plaintiffs herein, and said deed contained the same identical habendum clause as set forth in the conveyance to the Andersens.

The plaintiffs by their petition alleged that the defendants were blocking the driveway by continually parking one or two automobiles therein for the purpose of preventing the plaintiffs' use of said driveway, and sought relief by way of injunction against the defendants. The defendants answered the plaintiffs' petition by admitting and denying various allegations, and then recited in considerable detail the various conveyances of the two properties in an effort to show their title to the property. The answer then prayed that the application of the plaintiffs for a permanent restraining order be denied and:

". . . that the Court order and decree that the defendants' title to the real property possessed by them be free and clear of any right, title, or interest in or claim by the plaintiffs and that defendants have their costs."

The issues were joined by the pleadings and the trial court after

hearing all of the evidence in the case made findings and conclusions, and among them found in Paragraph 11 as follows:

"11. That during the period of time that The Prudential Insurance Company of America owned said property now owned by the plaintiffs, from June 1, 1934, until said company conveyed to the Jacksons on December 18, 1939, said defendant, Lottie E. Harris, did not take or attempt to take exclusive, open, hostile, notorious, and adverse possession as against the Prudential Insurance Company of America, and there is no evidence to establish any adverse possession or adverse claim of title by said defendant during the aforesaid period of time."

The evidence as abstracted disclosed that Francis A. Guy, attorney for the J. C. Nichols Company, represented that company in regard to the purchase of the house on Tract A by the Andersens in 1944. He testified:

". . . that in the negotiations for purchase, it was disclosed that a mortgage held by The Prudential Insurance Company, which had been placed on the property prior to the filing of the joint driveway agreement affecting the two properties, had been foreclosed raising a question as to whether or not the driveway agreement was still in existence, and that Mr. Andersen had been apprised of those facts, and *that it was his recommendation to Mr. Andersen, 'to be on the safe side for the protection of all parties concerned' as to whether the driveway agreement, originally put on the property by Mr. Brinton many years ago, had or had not been vitiated by the foreclosure proceedings, that a new driveway agreement be executed;* that he had called on the defendant, Mrs. Harris, with such a proposal for a reinstatement of the joint driveway agreement, but that she decided not to sign the same, that he had so advised Mr. Andersen, but that Mr. Andersen had gone ahead with the purchase of the property notwithstanding the question of the validity of the original driveway agreement . . .; that the question of the driveway again came up when the Andersens were attempting to sell their property in 1949; that the Andersens had entered into a contract for sale of their property to a Mr. and Mrs. Gordon, dated February 22, 1949, and that subsequently they executed a supplemental agreement; that he had written a letter to Mr. Andersen and told him that the driveway question was up again, and if the property were to be financed F. H. A. that the F. H. A. would certainly require a recorded driveway easement agreement about which there could be no question; that he recommended a survey and authority to attempt to procure a new driveway agreement from the Harrises; that subsequently he did prepare a proposed new driveway agreement for the Harrises' signature, calling for a payment of $500.00, but that the Harrises refused to sign the same; that the supplemental agreement with the Gordons had reduced the consideration from the original figure of $17,500.00 to a total consideration of $16,000.00, the reduction of $1,500.00 being to finance the cost of constructing a driveway, *if it were necessary to do so;* that the contract was signed, but was never consummated for the reason that the same was cancelled by mutual agreement, and the prospective purchasers, the Gordons, forfeited the sum of $1,000.00 which had been paid on the original contract . . ." (Emphasis added.)

The evidence as further abstracted concerning the testimony of Mr. Andersen is to this effect:

". . . that during all of the time from 1943 until he sold the property to the plaintiffs in May of 1949, neither of the defendants ever objected in any manner to the use of the driveway between the property, that they had no discussion about the driveway whatsoever, and that the defendants never at any time blocked or attempted to block or interfere with his use of the driveway; and that in his negotiations leading to the purchase of the property through the J. C. Nichols Company, there was no discussion about the driveway, other than he had relied upon the easement thereto, which was contained in the abstract of title . . ."

The testimony of one of the plaintiffs, Ray Smith, disclosed that his family consisted of his wife and two sons who had taken possession of Tract A the first part of June, 1949, and that he was in the automobile business and kept two automobiles for their personal use; that after they took possession of their property they used their basement garage and likewise used the driveway located on the defendants' property in ingress and egress to their garage; that the defendants used the "Y" branch on plaintiffs' property in driving their cars and backing the same into their garage, and that the plaintiffs likewise used the "Y" branch on the defendants' property for the same purpose. He further testified:

". . . that everything was harmonious as far as the use of the driveway was concerned for approximately ten months period after the plaintiffs had taken possession of their home, at which time defendant first objected on one occasion when the son of the plaintiffs had left a pickup truck parked on the plaintiffs' property behind their garage, and at that time it did block the defendant, Mrs. Harris, when she wanted to come over on plaintiffs' property with her automobile . . .; that thereafter the defendants gradually commenced parking their automobiles on the driveway leading from 49th Street Terrace, blocking the same, and that there was not sufficient room with the automobile parked on the driveway for another vehicle to pass and get to the garages at the rear of the residences; that at first the blocking of the driveway by defendants was occasional, but was progressive and became more and more frequent until approximately 18 months after plaintiffs had taken possession of their premises, defendants continually blocked the driveway day and night and although requested by plaintiffs many times to remove their vehicles, they refused to do so . . ."

Mr. Smith further testified that in negotiating the purchase of the property from the Andersens, he relied upon the abstract of title thereto and the opinion of his examining attorney. He testified that at no time until the hearing on the injunction held in the District Court of Johnson County did either of the defendants advise the

plaintiffs that they were the owners of the driveway, or that plaintiffs had no right to use the same.

The facts taken from the public records as abstracted from the evidence are not in controversy. The trial court, after making findings consistent therewith, further found as follows:

"12. That after the Jacksons acquired said property now owned by the plaintiffs, said defendant, Lottie E. Harris, formerly Lottie E. Beck, and her former husband made repairs to the driveway and no contribution was made for the same by any of the owners of said property. That at and after the acquiring of said property by the Andersens on May 13, 1944, the defendant, Lottie E. Harris, formerly Lottie E. Beck, exercised such possession over said driveway as to constitute exclusive, open, hostile, continuous, notorious, and adverse possession as against the Andersens and the Smiths up to the time of filing of this action. That the use of said driveway by the Andersens and Smiths was by the consent and permission of the defendant, Lottie E. Harris.

"13. That less than 15 years has elapsed from the time the Andersens acquired the property under their deed, dated May 13, 1943, [1944] and the date of commencement of this action on June 9, 1952.

"14. That plaintiffs, by the allegations in their petition, are basing their right to the use of said driveway upon the aforesaid written driveway easement, but the court finds that the allegations of said petition are not sufficiently broad to base their claim upon the existence of an apparent easement or an easement by necessity. Notwithstanding such a finding, the court finds from the evidence that there was no apparent easement such as to vest any legal right in the plaintiffs upon the purchase of their property, and further finds that there was no easement of necessity in favor of plaintiffs for the reason that there is ample room for the construction of a driveway to the west of plaintiffs' property in such a manner as to give the plaintiffs access to their basement garage in the rear of their home. The said Robert C. Andersen, while owner of said property, made investigation as to the construction of such a driveway and had obtained an estimate of cost thereof in the approximate amount of $1,500.00.

"15. That as a matter of law, judgment should be entered for the defendants on the ground that the mortgage foreclosure proceedings set forth severed and terminated any right, title or interest that plaintiffs may have had in said driveway under the written driveway agreement aforesaid.

"16. That by reason of the filing of this action and the plaintiffs obtaining a temporary injunction, the defendant, Lottie E. Harris, has been damaged in the sum of $200.00."

The trial court, after finding that it had jurisdiction of the parties and the subject matter of this action, made the following conclusions of law:

"2. That the mortgage foreclosure proceedings and the sale of the property now owned by plaintiffs without mention of or reference to the written driveway easement which was a matter of record and further, without the defendant, Lottie E. Harris, formerly Lottie E. Beck, being made a party in said pro-

ceedings, caused a severance and termination of the easement from the property thus sold, and said easement ceased to be a covenant running with the title to the land.

"3. That the defendant, Lottie E. Harris, exercised exclusive, open, hostile, continuous, notorious, and adverse possession of the property covered by said driveway easement from May 13, 1943, [1944] to the time of the filing of this action on June 6, 1952, and that said period of time being less than 15 years, said defendant, Lottie E. Harris, has not acquired full and complete title to said driveway easement by virtue of her adverse possession as aforesaid.

"4. That there was no easement of necessity existing in favor of plaintiffs, there being ample room for a driveway to the west of plaintiffs' property.

"5. That there was no apparent easement by virtue of which said plaintiffs acquired any right to the use of said driveway.

"6. That the written driveway easement is of no effect and constitutes a cloud on the title to the property owned by Lottie E. Harris."

The Journal Entry of Judgment setting forth the findings and conclusions continued with conclusions of law which quieted the title of the defendants in Tract B against the plaintiffs, Ray and Marie Smith; dissolved the temporary injunction granted, and denied the plaintiffs' prayer for a permanent injunction. Judgment was entered accordingly.

The court further entered judgment in the sum of $200.00 against the plaintiffs for damages by reason of the temporary injunction and ordered the plaintiffs to pay the costs of the action. The plaintiffs appealed from the aforesaid decision and judgment dated April 23, 1956. Plaintiffs further appealed from the decision and order made by the court on May 7, 1956, wherein the post-trial motions were overruled.

The defendants appealed from the judgment and decision of April 23, 1956, wherein the court made certain findings of fact and conclusions of law, specifically pertaining to adverse possession and the post-trial motion attacking the same.

The plaintiffs assign the following specifications of error:

"1. In ruling that the mortgage foreclosure and sale in 1932 of The Prudential Insurance Company mortgage, executed in 1927 on the property now owned by plaintiffs, terminated and severed the written driveway easement created, executed, and recorded in 1928 for the use and benefit of the property now owned by plaintiffs.

"2. In ruling that plaintiffs did not have an easement of necessity in and to the driveway located on defendants' property, which had been constructed and implaced thereon for the use and benefit of both properties of plaintiffs and defendants by Mr. Brinton, the former common owner of both properties.

"3. In ruling that plaintiffs did not have or acquire an apparent easement in and to the driveway located on the defendants' property."

The defendants assign the following specification of error:

"The District Court erred in entering judgment against the defendants on the issue of adverse possession and in overruling the post trial motion to modify the findings and judgment in this regard for the reason that the evidence and consistency with other findings by the court warranted and required such findings and judgment."

The defendants contend that this is an injunction action and that the relief sought by the plaintiffs is equitable in nature and within the discretion of the court. They contend that while the subject matter of the action is a driveway on residence property, the action is clearly one by nature *in personam* and the prayer seeks a temporary injunction, attorneys' fees and costs.

It is true that an injunction is distinctly an equitable remedy and that the relief depends upon broad principles of equity and may, in the discretion of the court, be granted or denied in accordance with the justice and equity of the case. (*Whitlock v. Schoeb*, 173 Kan. 43, 244 P. 2d 189; 28 Am. Jur., Injunction, § 3, p. 198; *Railway Co. v. Shriver*, 101 Kan. 257, 166 Pac. 519; and *Atchison, T. & S. F. Rly. Co. v. Hamilton*, 130 Kan. 685, 288 Pac. 560.)

The defendants, however, by their answer injected the title of Tract B, owned by them, into this case praying that their title be quieted, and further set up the theory upon which they sought to have their title quieted in Tract B by showing the various transactions affecting Tract A in its chain of title. The court by its journal entry of April 23, 1956, quieted the title of the defendants in Tract B.

The basic question we now have before this court is one which requires a determination of the title insofar as the same affects the validity of a recorded written easement herein described as a "Driveway Agreement." This immediately directs our attention to conveyances which are a matter of public record concerning Tract B, defendants' property.

While the factual statement of this case makes it appear somewhat involved and complex, in reality we have a rather simple question. To clearly indicate the simplicity of this question it may seem somewhat academic and a bit naive to reiterate herein simple definitions and basic legal concepts, but the smoke will clear away when this is done.

"An *easement* is an interest in land in the possession of another which

"(*a*) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists;

"(*b*) entitles him to protection as against third persons from interference in such use or enjoyment;

"(c) *is not subject to the will of the possessor of the land;*

"(d) is not a normal incident of the possession of any land possessed by the owner of the interest, and

"(e) is capable of creation.by conveyance." (Emphasis added.) (Restatement of Law, Property, Servitudes, § 450, p. 2901.)

An *appurtenance* is:

"That which belongs to something else; . . . something annexed to another thing more worthy; in common parlance and legal acceptation, something belonging to another thing as principal and passing as incident to it, . . ." (Webster's New International Dictionary, Second Edition.)

An *easement appurtenant* is defined in the Restatement of Law, Property, Servitudes, § 453, p. 2914, as follows:

"An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land."

In 28 C. J. S., Easements, § 4, pp. 633, 634, the following is said of an easement appurtenant:

"An easement appurtenant, or as sometimes called an easement proper, or easement appendant, is a privilege which the owner of one tenement has the right to enjoy in respect to that tenement, in or over the tenement of another person. It is an incorporeal right which, as the term implies, is attached to and belongs to some greater or superior right; something annexed to another thing more worthy, which passes as incident to it. An easement appurtenant inheres in the land, concerns the premises, and is necessary to the enjoyment thereof. It is incapable of existence separate and apart from the particular messuage or land to which it is annexed, there being nothing for it to act on. It is in the nature of a covenant running with the land, attaches to the land to which it is appurtenant, and passes to the heirs or assigns of the owner of the land, such as by a conveyance or devise of the dominant estate, . . ."

Easements are created in several ways. An easement may be created by an express conveyance which is described as a formal creation, an excellent example of which is the written easement designated as a driveway agreement heretofore set forth in the statement of facts of this case. Easements may also be created by implication.

In general the creation of easements by implication is well stated in the Restatement of Law, Property, Servitudes, § 474, p. 2972:

"When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created, within the limitations set forth in §§ 475 and 476, in favor of one who has or may have a possessory interest in one part as against one who has or may have a possessory interest in another part by implication from the circumstances under which the conveyance was made, alone."

(See also the discussion under §§ 474, 475 and 476, Restatement of Law, Property, Servitudes, pp. 2972 to 2989.)

The manner in which this case has been presented by the parties in their abstracts and briefs, including the findings and conclusions made by the lower court, requires a discussion of two situations which give rise to an implied easement. The first concerns an easement implied from what is commonly termed a "way of necessity." In this situation the easement must be one of *strict necessity*. On this subject the following is set forth in 28 C. J. S., Easements, § 35, pp. 695 to 697:

"An easement of necessity may be impliedly granted or reserved.

"Although this rule finds its most frequent application in connection with ways, it is not limited in application to such easements. The implication of easements of necessity is an application of the rule that wherever one conveys property he also conveys whatever is *necessary for its beneficial use and enjoyment,* and retains whatever is *necessary for the use* of the land retained. The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and the circumstances surrounding the transaction; the implication will not be made where it is shown that the parties did not intend it. A way of necessity will be implied more readily in favor of the grantee than in favor of the grantor.

"*Ways of necessity cannot be founded on an express grant,* but are dependent on an implied grant or reservation, and cannot exist where there was never any unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger. Necessity alone without reference to any relations between the respective owners of the land is not sufficient to create this right." (Emphasis added.)

The Kansas law is consistent with the foregoing statement and is set forth in *Moll v. Ostrander,* 124 Kan. 757, 262 Pac. 592, wherein numerous references and cases are set forth on this subject.

The second situation which gives rise to an implied easement is commonly referred to as an implied reservation or grant. Such easement must be *apparent and continuous*. The rule is stated in 28 C. J. S., Easements, § 34, p. 694:

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a *continuous, permanent, and apparent nature,* and sells the one against which such quasi easement exists, such easement, if necessary to the reasonable enjoyment of the property retained, is, under what is perhaps the more generally accepted rule, impliedly reserved to the grantor, no distinction being made between the circumstances under which an easement is regarded as impliedly granted and those under which one is regarded as impliedly reserved . . ." (Emphasis added.)

A full discussion of the Kansas law consistent with the foregoing statement is set forth in *Van Sandt v. Royster,* 148 Kan. 495, 83 P. 2d 698. Many citations and authorities are therein discussed. The

term *"apparent"* with reference to implied easements of this type is used in its common and ordinary sense, meaning visible, capable of being seen or obvious upon inspection.

The use of the word "necessary" in defining implied easements should not be confused. The implied easement arising from a "way of necessity" is founded upon *strict necessity*. The implied easement arising from an "implied reservation or grant" is founded upon the intention of the parties as well as what might reasonably have been foreseen the other party to the conveyance expected. It may be said the parties assumed to intend the continuance of uses known to them which are in a *considerable degree necessary to the continued usefulness of the land*. The parties will be assumed to know and to contemplate the continuance of *reasonably necessary* uses which have so altered the premises as to make them apparent upon reasonably prudent investigation. (*Van Sandt v. Royster,* supra.)

Did the mortgage foreclosure sale of Tract A in 1932 terminate and sever the written driveway easement which was formally created and recorded in 1928 for the use and benefit of the owners of the property now owned by the plaintiffs?

The defendants in one breath assert that they were not made parties to the mortgage foreclosure proceeding and are thereby unaffected by said proceedings, and yet in the other breath, they come forth in their answer to the petition of the plaintiffs and argue in substance that they have gained something from the proceedings in foreclosure of the mortgage on Tract A, now owned by the plaintiffs. The fact that the mortgage on plaintiffs' property was foreclosed against their predecessors in title gave nothing to, or took nothing away from the defendants whatever. They had no part in the foreclosure proceeding and have no interest whatever in plaintiffs' property. These defendants, as owners of Tract B, have been bound for more than twenty years by a written recorded easement over their land. They took title to their property by conveyance from their predecessors *subject to the express easement*. Their grantor conveyed the interest he had in Tract B to them with its burden as a servient estate. The defendants thereby became the owners of the servient estate.

The defendants by their answer have set forth in detail all conveyances materially affecting Tract A, now owned by the plaintiffs, in an effort to bolster their title from alleged defects in the plaintiffs' title. This has never been recognized in Kansas law.

An analogous situation is presented where a plaintiff brings an

action in ejectment. There the plaintiff must rely on the strength of his own title and not on the weakness of his adversary's title. (*Haseltine v. Nuss,* 97 Kan. 228, 155 Pac. 55; *Intfen v. Hutson,* 145 Kan. 389, 65 P. 2d 576; and *McHenry v. Pence,* 168 Kan. 346, 212 P. 2d 225.)

Unless the record discloses a valid termination of the written driveway easement for other reasons, the defendants' title to Tract B shows as a matter of record that it is subject to the written driveway easement which was formally executed, and burdens Tract B with the servitude of the easement outstanding in the owners of Tract A.

Does the written easement designated herein as a "Driveway Agreement" subsist as a present valid easement in favor of the plaintiffs?

Defendants seek to inject by their constant repetition of the expressions "apparent easement" and "easement of necessity" the law relative to implied easements into this action. Implied easements have no place in the consideration of this case unless it is determined that the *express easement* has terminated and that rights are being asserted to an easement over the defendants' property by reason of implication.

Turning now to the situation as it existed on the 29th day of August, 1927, when Brinton, the common owner of Tract A and Tract B, conveyed Tract A to Hughes, we find the facts admitted by the parties. Both parties introduced plats showing the property as it was then admitted to exist with a concrete driveway branching into a Y-shaped fork at the rear of the residences drawn on the plats leading to the respective garages on Tract A and Tract B. The defendant, Mrs. Harris, admitted the concrete driveway was in existence when she first saw it in 1930. At the time of this conveyance it carried with it an implied grant of an easement to Hughes, since the grantor was the common owner of the two tracts before the conveyance, the driveway on Tract B was continuous and apparent in that it was visible or capable of being seen and apparent upon reasonably prudent investigation of the properties, there never at any other time being any other roadway or driveway available to the predecessors in title of the plaintiffs to get to their basement garage. The intention of the parties to create an implied easement could reasonably be inferred from the assumed continuance of uses known to them, which were to a considerable degree necessary to the continued usefulness of the property, and from all other facts and cir-

cumstances including what might reasonably have been foreseen that the other party to the conveyance expected.

All of this was subsequent to the execution of the mortgage given the Prudential Insurance Company of America on June 7, 1927.

Upon the execution of the written "Driveway Agreement" the apparent easement, implied from the original grant, and passing to the successors in title, merged into the express or formal easement upon which the plaintiffs base their cause of action.

It may be noted that the written driveway agreement giving rise to the express easement, which is the subject of this action, by its very terms and by the legal definitions heretofore given, is an easement appurtenant. It specifically provides that it is a covenant running with the title to the land and is binding upon the parties and their heirs and assigns. It provides that the easement may be terminated by the mutual agreement of the parties thereto, or their heirs and assigns. At no place in the record is there any disclosure that the parties *have mutually terminated* the written driveway agreement.

An easement may be terminated in other ways, such as by abandonment—where there must be an intention to abandon the easement and acts manifesting such intention, all of which does not appear from the record before this court. No assertion is made by the defendants that the easement has been abandoned. An easement may be terminated by adverse possession—which requires strong action on the part of the owners of the servient estate such as would entitle the owners of the dominant estate to maintain an action for obstructing their enjoyment of the easement. (28 C. J. S., Easements, § 63, p. 729.) While it is unnecessary to go into detail on this point and burden the opinion, since the trial court found specifically that the defendants had asserted rights of adverse possession against the plaintiffs or their predecessors in title for a period of less than fifteen years, the evidence in all fairness does not indicate such assertion until about April, 1950, approximately twenty-six months prior to the time this lawsuit was filed. Whether or not rights have been acquired by reason of adverse possession is a question of fact for the trial court and will not be disturbed on appeal, unless all the competent and creditable evidence compels a different conclusion. (*Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784.) We must, therefore, conclude that the express easement created by the written driveway agreement was not terminated by adverse possession.

There was no finding by the trial court that the plaintiffs or their predecessors in title had abandoned the easement granting them the right to use the driveway on the defendants' property. At best from the evidence, the controversy concerning the easement was injected out of an abundance of caution through the attorney of the J. C. Nichols Company, who never at any time asserted definitely that the easement was terminated, but as a precautionary measure suggested a proposal seeking to reinstate the joint driveway agreement. At all times after these conversations relative to a subsequent easement the plaintiffs or their predecessors in title used the driveway as an easement enjoying all the rights under the express easement without interference on the part of the defendants until approximately twenty-six months prior to the filing of this lawsuit.

The defendants contend that since the petition in the foreclosure action in the year 1932 foreclosing the mortgage against Tract A, now owned by the plaintiffs, did not mention the driveway agreement, and since the driveway agreement was executed after the mortgage to the Prudential Insurance Company of America, the mortgage foreclosure proceedings severed the easement from the owners of the property of Tract A. This express easement was definitely an *easement appurtenant,* and the sherriff's deed conveyed Tract A *with appurtenances.*

It is a general rule of law in this state that a purchaser at a foreclosure sale takes the title of all the parties to the action. (*Ferguson v. Cloon,* 89 Kan. 202, 131 Pac. 144.)

In the case of *Cabeen v. Whalen,* 120 Kan. 492, 243 Pac. 1021, it is stated in Syl. ¶ 1:

"In a judicial sale of land made in pursuance of a decree of foreclosure wherein all of the parties to the action were barred from claiming any rights or equities in the property, the deed to the purchaser conveys not only all the title and interest held by the mortgagor but all of those held by the plaintiff mortgagee."

(See, also, *Malone v. Young,* 148 Kan. 250, 81 P. 2d 23, and *Edminster v. Young,* 148 Kan. 282, 81 P. 2d 33.)

In the case of *Ranney v. Childs,* 96 Kan. 483, 152 Pac. 621, a stairway was located entirely on the property of the owners of the servient estate, which was used in common with the owners of the adjoining property who had an easement created by a written contract. After a mortgage foreclosure sale the court held that the written agreement was a covenant running with the land, and that the purchaser at the foreclosure sale was entitled to an injunction

to prevent the owners of the servient estate from boarding up the stairway. The precise question before this court was not raised in the *Ranney* case.

Another group of analogous cases is indicated where a public street is vacated. Under such circumstances the vacated lands revert to the owners of the adjoining lots in proportion to the frontage of the lots thereon and become a part of such lots and pass under a conveyance in which the lots are described as originally platted. (*Rowe v. Bowen*, 113 Kan. 641, 215 Pac. 1022.)

Under the provisions of G. S. 1949, 77-201, it is stated:

"*Eighth.* The word 'land', and the phrases 'real estate' and 'real property', include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

G. S. 1949, 60-3465, provides as follows:

"That every deed for any lands or tenements heretofore or hereafter made and executed by any sheriff or other officer, purporting to have been made under or in pursuance of any execution, process or judgment of any court of record in this state, shall be sufficient evidence of the legality of the sale and the proceedings therein until the contrary be proved, *and shall vest in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the person or persons against whom the execution, writ or order was issued at or after the time when such lands and tenements became liable to the satisfaction of the judgment or lien for which the same was sold . . .*" (Emphasis added.)

Whether an appurtenant easement passes with the conveyance of a dominant estate is treated in 17 Am. Jur., Easement, § 127, p. 1015, as follows:

". . . An appurtenant easement may be transferred by a conveyance of the dominant estate notwithstanding the deed does not refer to the easement expressly, . . . An appurtenant easement is embraced within a conveyance of a dominant estate that purports to include and convey 'appurtenances,' . . . There is, moreover, a well-established rule that every appurtenant easement passes with the conveyance of the dominant tenement, unless a contrary intention is disclosed by the deed of conveyance, notwithstanding the deed does not purport expressly to include 'appurtenances' . . . *An easement appurtenant to land, created or acquired by a mortgagor or his grantee subsequent to the execution of the mortgage on the dominant estate, passes under the mortgage although not specifically mentioned therein and inures to the benefit of the mortgagee or of a purchaser at the foreclosure sale and his grantee,* . . ." (Emphasis added.)

The provisions of G. S. 1949, 60-3465, heretofore quoted, standing alone are authority for the emphasized proposition of law above quoted with approval from American Jurisprudence.

The rule herein presented is consistent with the law in other jurisdictions. (See annotation at 116 A. L. R. 1079, and the numerous authorities therein presented.)

In view of the foregoing, it follows that the lower court erred in entering judgment for the defendants on the ground that the mortgage foreclosure proceedings in 1932 severed and terminated any right, title or interest that plaintiffs had in said driveway under the written driveway agreement under the facts and circumstances hereinbefore described.

Since the written driveway easement is a valid and subsisting easement with which the defendants' property is burdened as the servient estate in favor of the dominant estate owned by the plaintiffs, it becomes unnecessary for us to pass upon plaintiffs' second and third specifications of error pertaining to the trial court's finding that plaintiffs did not have an easement of necessity or an apparent easement.

The defendants' specification of error has been discussed under termination of an easement by adverse possession and is without merit for the reasons assigned.

The judgment of the lower court quieting defendants' title to their property against the plaintiffs, awarding damages for the issuance of the temporary injunction and costs was erroneous. The judgment is reversed with directions to proceed in accordance herewith.