(224 P.3d 581)
No. 99,896

SAMANTHA MCGINNES, *et al.*, *Appellants/Cross-appellees*, v. WESLEY MEDICAL CENTER, *Defendant*, and ESTEPHAN N. ZAYAT, M.D., *Appellee/Cross-appellant*.

Opinion filed January 29, 2010.

*Bradley J. Prochaska*, of Prochaska, Giroux & Howell, of Wichita, and *Aaron W. Smith*, of The A.W. Smith Law Firm, P.C. of Columbia, Missouri, for appellant/cross-appellee.

*Lee H. Woodard* and *Anthony M. Singer*, of Woodard, Hernandez, Roth & Day, LLC, of Wichita, for appellee/cross-appellant.

*Timothy J. Finnerty* and *Ryan D. Weltz*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for *amicus curiae* Kansas Association of Defense Counsel.

*Toby Crouse, Scott C. Nehrbass*, and *James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, for *amicus curiae* Kansas Chamber of Commerce.

*Cathy J. Dean, Douglas J. Kramer*, and *Lauren E. Tucker McCubbin*, of Polsinelli Shugart PC, of Kansas City, Missouri, for *amici curiae* Kansas Medical Society and Kansas Hospital Association.

Before GREENE, P.J., MALONE, J., and KNUDSON, S.J.

KNUDSON, J.: Plaintiffs Samantha McGinnes, individually, as next friend of Daniel McGinnes, Seth McGinnes, and Jeremy McGinnes, and as administrator for the Estate of Darryl McGinnes (McGinnes), deceased, filed this medical malpractice action against defendant Estephan N. Zayat, M.D. (Zayat), to recover monetary damages for personal injury and wrongful death. After a lengthy trial, the jury returned a verdict in favor of the plaintiffs that totaled $2,000,000. The plaintiffs appeal the application of statutory caps on damages under K.S.A. 60-1903 and 60-19a02 that reduced the award to $1,000,000. In his cross-appeal, Zayat claims two evidentiary rulings require a new trial and that the trial court erred in awarding prejudgment interest to the plaintiffs.

We hold the defendant is not entitled to a new trial; statutory caps on damages do not constitute an avoidance or affirmative defense under K.S.A. 60-208(c); the statutory caps are constitutional; and the trial court did abuse its discretion in awarding prejudgment interest to the plaintiffs. Therefore, we affirm in part and reverse in part on the issues presented.

In early 2002, McGinnes sought treatment at Wesley Medical Center in Wichita, Kansas, after suffering from intermittent but worsening gastrointestinal discomfort for several months. At the time of admission, McGinnes was 38 years of age, 6' 5" tall, and weighed more than 400 pounds.

Zayat is board certified in gastroenterology and in internal medicine. He decided an endoscopic retrograde cholangiopancreatography (ERCP) was necessary because McGinnes' medical history, other test results, and the pain McGinnes was experiencing caused Zayat to suspect there might be gallstones in McGinnes' bile duct.

An ERCP is a procedure in which a gastroenterologist guides an endoscope through a patient's digestive tract into the pancreatic and common bile ducts to determine if any abnormalities are present and to remove any gallstones that may be present. It is a complicated procedure with higher risks for morbidity and mortality than less invasive gastrointestinal procedures available to detect gallstones or other abnormalities.

McGinnes consented to the ERCP, and Zayat performed the procedure on February 21, 2002. However, the result was that both the pancreatic duct and the common bile duct appeared normal.

Following the procedure, McGinnes developed acute pancreatitis, a common complication of an ERCP, and died a few days later on February 25, 2002. The cause of death was cardiac arrhythmia, secondary to a pulmonary embolism, caused by the ERCP-induced pancreatitis.

On February 13, 2004, this litigation was filed with the plaintiffs alleging various acts of medical malpractice and seeking damages for wrongful death and personal injury. Prior to trial, Wesley Medical Center was granted summary judgment and was not further involved in this action. On July 27, 2007, the jury returned a verdict in favor of the plaintiffs for a total of $2,000,000. The wrongful death damages were itemized as $250,000 for noneconomic loss to date; $250,000 for future noneconomic loss; $250,000 for economic loss to date; and $250,000 for future economic loss. The personal injury survival damages were $1,000,000 for conscious pain and suffering and accompanying mental anguish.

After trial, the defendant Zayat moved to apply the statutory caps on damages under K.S.A. 60-1903 and K.S.A. 60-19a02 to the jury verdict. The plaintiffs objected, contending statutory caps constituted an avoidance or affirmative defense that had to be pled under K.S.A. 60-208(c) or at least raised as a claim for relief under Supreme Court Rule 140(g)(2) (2009 Kan. Ct. R. Annot. 223). Alternatively, the plaintiffs asserted the statutory caps on damages are unconstitutional. Following a hearing on November 7, 2007, the trial court applied the caps and entered judgment for the plaintiffs in the amount of $1,000,000. The district court also awarded pre-

judgment interest of 10 percent per annum pursuant to K.S.A. 16-201 from the date of verdict to the date judgment was entered.

Additional facts and circumstances will be considered as necessary under the issues presented. Because granting a new trial would be dispositive of all issues on appeal, we will first address the evidentiary rulings raised by the defendant Zayat in his cross-appeal.

The defendant seeks review of two evidentiary rulings by the trial court: (1) Exclusion of testimony from Zayat that one of the reasons he did not consider a less evasive procedure than the ERCP was because patient McGinnes would not fit into the cylinder of the magnetic resonance imaging apparatus; and (2) exclusion of testimony from Dr. Glen Lehman to explain and demonstrate that by using one of the ERCP x-rays, the dilation of the patient's bile duct could be actually determined by measurement.

*Limiting Dr. Zayat's Testimony under an Order In Limine*

An appellate court reviews a trial court's decision on a motion in limine under the abuse of discretion standard. *Gerhardt v. Harris*, 261 Kan. 1007, 1010, 934 P.2d 976 (1997). To fully appreciate the trial court's order in limine, we must consider certain aspects of discovery and the final pretrial conference before trial.

Plaintiffs' negligence claims included allegations that Zayat failed to adequately inform McGinnes of an appropriate and safer diagnostic alternative to ERCP called magnetic resonance cholangiopancreatography (MRCP) and that the defendant performed the ERCP without first obtaining an MRCP.

These allegations were supported by the plaintiffs' medical experts, including Dr. Peter Cotton, a board certified gastroenterologist, whose anticipated testimony at trial was disclosed in pretrial discovery. According to Dr. Cotton, MRCP is a safe, noninvasive alternative to ERCP that involves using a magnetic resonance imaging (MRI) scan to give images of the common bile duct and pancreatic duct to confirm or rule out the presence of a gallstone. In Cotton's opinion, Zayat failed to adequately inform McGinnes of MRCP as an appropriate alternative to ERCP and performed the ERCP without first obtaining an MRCP.

Notwithstanding the plaintiffs' allegations of failure to inform McGinnes of the alternate test and conduct a MRCP, the defendant did not at any time prior to trial opine the patient was too large to fit into the MRI tube. This assertion was first mentioned during voir dire examination by the defendant's attorney.

A final pretrial conference was conducted under Supreme Court Rule 140. Subparagraphs (g)(1) and (g)(2) of Rule 140 state:

"(1) Plaintiff will state concisely his factual contentions and the theory of his action.

"(2) Defendant will state concisely his factual contentions and the theories of his defenses and claims for relief." 2009 Kan. Ct. R. Annot. 224.

At the pretrial conference, the plaintiffs' stated theory of recovery was that Zayat departed from the required standard of medical care for McGinnes. Plaintiffs' factual contentions included: Zayat failed to adequately inform McGinnes that a MRCP was an appropriate alternative to an ERCP; Zayat performed an ERCP without medical indications in support of the procedure; and Zayat performed an ERCP without first obtaining a MRCP. Conversely, in the defendant's contentions and theory of defense, there was no specific reference to the MRCP or other specific factual refutation of the plaintiffs' contentions. Rather, the defendant stated that he "denies generally each and every allegation of negligence or fault on his part as asserted by plaintiffs"; he "specifically denies that any act or omission on his part was the proximate cause of Darryl McGinnes' death"; and he "contends that Darryl McGinnes' injuries and death were due to events and conditions over which he had no control, which would have occurred without fault by any health care provider." Zayat's failure to disclose his contention that McGinnes would not fit into the MRI tube set the stage for what then occurred at trial.

During voir dire, defense counsel asked questions of the jury panel including whether McGinnes would fit into the MRI scanner. In response, the plaintiffs filed a motion in limine to exclude any testimony at trial that McGinnes would not fit into the scanner, arguing that there was no indication in the depositions, expert reports, defendant's answer, or pretrial order that McGinnes' size precluded use of MRCP.

The district court granted the motion, finding that the testimony about whether McGinnes would fit into the MRI scanner was a factual contention by the defendant that should have been disclosed and included in the pretrial order. Second, the trial court reasoned that there was no evidence any attempt was actually made to fit McGinnes into the scanner, making the testimony at issue speculative. Nevertheless, the trial court did rule that the defendant could present evidence as to any limitation on MRI testing due to McGinnes' weight of over 400 pounds, since evidence of his weight was contained in the medical records and charts revealed during discovery.

Subsequently, at trial, the defendant in his direct testimony did explain to the jury that a MRCP was not an option for McGinnes for two reasons: the patient weighed too much for the machine, and the defendant believed the MRCP results in Wichita were unreliable at that point in time.

During cross-examination of the defendant Zayat, the following exchange occurred:

"Q. Doctor, let's talk about MRCP for a little bit.
"A. Yes.
"Q. Now, you don't deny that MRCP was available in Wichita in 2002?
"A. It was available, yes.
"Q. It was available?
"A. Yes.
"Q. You actually used MRCP before February, 2002 in Wichita, hadn't you?
"A. Yes, I have, with disappointing results.
. . . .
"Q. Now, Dr. Zayat, I think you testified yesterday that MRCP wasn't available for this patient. Do you recall that?
"A. It was physically impossible to do an MRCP on this patient in Wichita in that year.
"Q. Well, the reason you say it was physically impossible is because there is a weight limit on the MRCP table. Do you recall that?
"A. Well, there is more than one limitation. One of them is the weight limit.
"Q. Well, the limitation that you said prevented you from doing an MRCP in this patient was because of the weight limit, wasn't that true? That is what you testified to."

At this point, defense counsel requested a bench conference, during which defense counsel evidently argued that plaintiffs'

counsel was trying to "hogtie" the defendant by emphasizing the weight limit in his questions while the defendant knew he could not comment on the defendant's size precluding use of an MRCP.

Following the bench conference, questioning resumed briefly:

"Q.   Doctor, isn't it true that you testified yesterday that the reason that you couldn't do an MRCP on this patient was because of the weight limit on the table?

"A.   Well, I said that there was more than one limitation. One of them is the weight of the table. Second is the problem of the accuracy of the test, and the third is the inability of the patient to fit through the —

"THE COURT: Dr. Zayat, Counsel, this is probably a good place to take a recess for the evening."

After the jury was excused, the court and counsel discussed the defendant's reference to McGinnes' size and inability to fit in the MRI scanner. Defense counsel argued plaintiffs' counsel opened the door through his questioning, but plaintiffs' counsel responded, and the district court agreed, that the questioning was limited in scope to the defendant's testimony on direct as to the MRCP limitations.

When trial resumed the next day with the defendant still testifying, the district court admonished the jury to disregard the last answer given by the defendant and to not consider it as evidence. Plaintiffs' counsel then resumed cross-examination on the topic of MRCP.

Now, before us, the defendant argues the district court abused its discretion in excluding his testimony as to McGinnes' inability to fit into the MRI scanner because plaintiffs' counsel did not question the defendant at his deposition regarding his reasons for not using an MRCP. The defendant contends this testimony was not a defense he was required to preserve in the pretrial order, but rather a supporting fact underlying his defense that he performed the ERCP because it was medically appropriate. The defendant asserts the plaintiffs "exacerbated the hole" in his explanation of why he did not perform an MRCP through the structure of their cross-examination. Finally, the defendant argues that his belief that McGinnes would not fit in the MRI scanner was not speculative, as stated by the district court. According to the defendant, the exclusion of this evidence resulted in an incomplete explanation

for his failure to conduct an MRCP and the importance of this topic was shown by a question submitted by the jury regarding the capacity of the tables used for CT scans and MRCPs.

The purpose of the pretrial conference procedure and pretrial order is to eliminate the element of surprise at trials, to simplify the issues and trial procedures by full disclosure to all parties of the anticipated evidence, and to enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. See *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 18, 61 P.3d 68 (2002); *Norton Farms, Inc. v. Anadarko Petroleum Corp.*, 32 Kan. App. 2d 899, 904, 91 P.3d 1239 (2004).

It has also been stated that the purpose of a pretrial order under K.S.A. 60-216(e) is to " 'acquaint each party in advance of trial with respect to the factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at trial.' " *Wozniak v. Lipoff*, 242 Kan. 583, 596, 750 P.2d 971 (1988).

It should be noted that the discovery provisions of our Rules of Civil Procedure in general, not just the pretrial conference and pretrial order, "were designed from the outset to do away with trial by ambush, a popular sport before adoption of the Rules." *Warren v. Heartland Automotive Services, Inc.*, 36 Kan. App. 2d 758, 760, 144 P.3d 73 (2006). "The use of the discovery process has for the most part eliminated surprise and ambush from the trial of civil actions. Full disclosure of all relevant facts gathered or known by the parties is essential to secure a just determination of an action." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 534, 856 P.2d 1313 (1993). Concern for full disclosure is also displayed in our rules of evidence, where K.S.A. 60-445 states that "the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

Here, the plaintiffs' theory of case and contentions to support medical malpractice included Zayat's failure to discuss an MRCP with McGinnes or to perform an MRCP before performing the

ERCP. Notwithstanding the defendant's knowledge of the plaintiffs' theory and contentions through discovery and pretrial conference, he did not ever suggest McGinnes was too big to fit in the MRI tube.

To the extent the defendant argues that the plaintiffs' counsel opened the door through his cross-examination, we do not agree. Plaintiffs' counsel carefully phrased his questions to refer only to the two reasons that the defendant gave during his testimony on direct. It does not appear that in doing so the plaintiffs opened the door for the defendant to discuss the third reason.

We conclude the trial court did not abuse its discretion in excluding Zayat's opinion that McGinnes would not fit in the MRI scanner, thereby precluding the MRCP procedure. Its ruling is also understandable when considered in context—Zayat could not even remember discussing an MRCP with McGinnes, and he unilaterally ruled out the noninvasive diagnostic evaluation because of no confidence in Wesley's technicians and radiologists.

*Limiting Dr. Lehman's Testimony*

The defendant also argues the district court abused its discretion in not allowing one of the defendant's expert witnesses, Dr. Glen Lehman, to measure the actual dilation of McGinnes' bile duct by interpreting one of the x-rays taken during the ERCP. The defendant contends this was highly relevant evidence because of the different opinions by the expert witnesses at trial as to the amount of dilation needed to indicate bile duct obstruction and to justify the use of ERCP.

In response, the plaintiffs contend this court cannot properly consider this issue because the defendant did not proffer the evidence Dr. Lehman would have testified to when the district court sustained the plaintiffs' objection. Plaintiffs also assert that the evidence was properly excluded because the dilation of the bile duct was not in issue and the testimony failed to take into account other dilation factors. Further, the plaintiffs assert that had the defendant made a proper record in response to their objection, they would have shown that Dr. Lehman did not offer any opinions as to the size of the bile duct in his written report or deposition and the

defendant did not preserve this issue in the pretrial order. Finally, the plaintiffs argue the limitation on Dr. Lehman's testimony, if error, was harmless error that could not have prejudiced the defendant.

"Generally, the admission of expert testimony lies within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of such discretion. [Citations omitted.]" *State v. Johnson*, 286 Kan. 824, 831, 190 P.3d 207 (2008).

Dr. Lehman was testifying during direct examination about the ERCP performed on McGinnes, using x-rays taken during the procedure, when the following exchange occurred:

"Q. All right. Thank you, Doctor. Shall we go to your next film. I think it's 1701. What do you see on that film?

"A. Here we see filling of the bile duct, and, again, it's a little bit hazy, because of how heavy the patient is, but it does give us an opportunity to say, plus the next film, that we don't see any stones, and, but it also gives us an opportunity to measure the diameter of the duct, and that duct, we know that the scope is 11 millimeters in diameter, that big, and so if we measure the scope here at 11 and it measures 15, we know it's magnified 15 levels, and then if we measure the common duct —

"[Plaintiff's counsel]: Objection, Your Honor.

"THE COURT: Sustained.

"[Plaintiffs' counsel]: Thank you.

"[The witness]: I'm sorry?

"THE COURT: There has been an objection to measuring the duct.

"[The witness]: We measure every patient's duct. That is bad technique not to measure the duct.

"THE COURT: You don't argue with me.

"[Defense counsel]: So he can't measure the duct?

"THE COURT: Right.

"[Defense counsel]: Very good.

"[Plaintiffs' counsel]: Move to strike the testimony in that regard.

"[Defense cousnel]: I don't think he testified as to the measurement of the duct.

"THE COURT: Well, he started to. He testified about measuring with a scope and then at the end. That is all stricken."

Direct examination then continued.

Under our rules of evidence, K.S.A. 60-405 states:

"A verdict or finding shall not be set aside, not shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence

unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

"It is well established that a party may not assert error based upon the erroneous exclusion of evidence in the absence of a proffer of that proposed evidence. [Citations omitted.]" *State v. Coleman*, 253 Kan. 335, 344, 856 P.2d 121 (1993). The standard for a sufficient proffer is whether the proffer contains the *substance* of the excluded testimony. *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 623, 822 P.2d 591 (1991). However, a formal offer of proof is not required if the record otherwise adequately discloses the substance of the evidence sought to be introduced. Failure to make an adequate proffer of excluded evidence precludes appellate review because the appellate court has no basis to consider whether the district court abused its discretion. *State v. Evans*, 275 Kan. 95, 99-100, 62 P.3d 220 (2003).

Here, the defendant argues that his failure to make a proffer of Dr. Lehman's excluded testimony may be overlooked because the record reveals the substance of the witness' testimony; namely, "that Dr. Lehman was going to use one of the ERCP x-rays to demonstrate and testify about measurement of Mr. McGinnes' bile duct." Significantly, however, there was no indication what the expected measurement would be. The *substance* of the excluded testimony, as argued by the defendant on appeal, would have been the *actual* measurement of the bile duct. Without a proffer of what the actual measurement would have been, this court is precluded from meaningful appellate review of the district court's decision.

Further, it appears that meaningful appellate review would be further hampered by the lack of any indication in or around the above transcript excerpt of the grounds for the plaintiffs' objection and the district court's ruling excluding the evidence. An issue involving the measurement of the bile duct on films arose several days earlier in the trial, but that issue involved the defendant's testimony and, apparently, a different set of scans, and so it is not at all clear whether the later objection and exclusion was related to the previous issue. The party claiming error has the burden to

designate a record sufficient to establish the claimed error; without such a record, the claim of error fails. *Kelly v. VinZant,* 287 Kan. 509, 526, 197 P.3d 803 (2008). Without an adequate proffer of the excluded evidence and an adequate record of the district court's ruling, this claim of error by the defendant fails.

Accordingly, we hold the trial court did not err in its evidentiary rulings and the defendant is not entitled to a new trial. We turn next to the issues raised by plaintiffs in this appeal.

*Did the Defendant Waive Application of the Statutory Caps on Damages*

Plaintiffs' argue that the defendant was required to plead statutory caps on damages as an affirmative defense or avoidance in the answer or raise the matter as a claim of defense at pretrial.

K.S.A. 60-1903 states:

"(a) In any wrongful death action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages, other than pecuniary loss sustained by an heir at law, cannot exceed in the aggregate the sum of $250,000 and costs.

"(b) If a wrongful death action is to a jury, the court shall not instruct the jury on the monetary limitation imposed by subsection (a) upon recovery of damages for nonpecuniary loss. If the jury verdict results in an award of damages for nonpecuniary loss which, after deduction of any amounts pursuant to K.S.A. 60-258a and amendments thereto, exceeds the limitation of subsection (a), the court shall enter judgment for damages of $250,000 for nonpecuniary loss.

"(c) In any wrongful death action, the verdict shall be itemized by the trier of fact to reflect the amounts, if any, awarded for:

(1) Nonpecuniary damages;

(2) expenses for the care of the deceased caused by the injury; and

(3) pecuniary damages other than those itemized under subsection (c)(2).

"(d) Where applicable, the amounts required to be itemized pursuant to subsections (c)(1) and (c)(3) shall be further itemized by the trier of fact to reflect those amounts awarded for injuries and losses sustained to date and those awarded for injuries and losses reasonably expected to be sustained in the future.

"(e) In any wrongful death action, the trial court shall instruct the jury only on those items of damage upon which there is some evidence to base an award."

K.S.A. 60-19a02 states:

"(a) As used in this section 'personal injury action' means any action seeking damages for personal injury or death.

"(b) In any personal injury action, the total amount recoverable by each party from all defendants for all claims of noneconomic loss shall not exceed a sum total of $250,000.

"(c) In every personal injury action, the verdict shall be itemized by the trier of fact to reflect the amount awarded for noneconomic loss.

"(d) If a personal injury action is tried to a jury, the court shall not instruct the jury on the limitations of this section. If the verdict results in an award for noneconomic loss which exceeds the limit of this section, the court shall enter judgment for $250,000 for all the party's claims for noneconomic loss. Such entry of judgment by the court shall occur after consideration of comparative negligence principles in KS.A. 60-258a and amendments thereto.

"(e) The provisions of this section shall not be construed to repeal or modify the limitation provided by K.S.A. 60-1903 and amendments thereto in wrongful death actions.

"(f) The provisions of this section shall apply only to personal injury actions which are based on causes of action accruing on or after July 1, 1988."

K.S.A. 60-208(c) states:

*"Affirmative Defenses.* In pleading to a preceding pleading a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, *res judicata*, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

Interpretation of a statute is a question of law over which this court has unlimited review. *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271, 202 P.3d 7 (2009). Further, the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Hall v. Dillon Companies, Inc.* 286 Kan. 777, 785, 189 P.3d 508 (2008).

We believe two lines of reasoning support our determination that the statutory caps on damages do not have to be pled in avoidance or as affirmative defenses. First, there is the mandatory, unambiguous language of K.S.A. 60-1903 and K.S.A. 60-19a02 that requires not only application of the caps but other trial procedures and responsibilities directed toward the trial court and jury, not

the parties. See *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 361, 789 P.2d 541 (1990) (noting the mandatory language of K.S.A. 60-19a02), *disapproved in part on other grounds Bair v. Peck*, 284 Kan. 824, 844, 811 P.2d 1176 (1991).

Second, we hold the statutory caps do not constitute an avoidance or affirmative defense. A defense is a defendant's stated reason why the plaintiff has no valid case, and an affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the petition are true. See Black's Law Dictionary 451 (8th ed. 2004). An avoidance (confession and avoidance) is a plea in which a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect. See Black's Law Dictionary 317 (8th ed. 2004).

We conclude the trial court correctly determined statutory caps on damages do not have to be pled or raised at pretrial conference.

*Are the Statutory Caps on Damages Constitutional?*

The plaintiffs challenge the constitutionality of the statutory caps on damages found in K.S.A. 60-1903 and K.S.A. 60-19a02. Specifically, the plaintiffs assert the caps violate their right to trial by jury under the Kansas Constitution, their right to remedy by due course of law under § 18 of the Kansas Constitution Bill of Rights, their equal protection rights under the Kansas Constitution, and the Separation of Powers doctrine.

The defendant contends these constitutional challenges have already been rejected by our Supreme Court in other cases and, therefore, this court is required to follow this precedent and reject the plaintiffs' arguments. The cases cited are *Samsel*, 246 Kan. at 361-63 (determining damages caps under K.S.A. 60-19a02 are constitutional), and *Leiker v. Gafford*, 245 Kan. 325, Syl. ¶ 15, 778 P.2d 823 (1989) (determining damages caps under K.S.A. 60-1903 are constitutional), *disapproved in part on other grounds Martindale v. Tenny*, 250 Kan. 621, 628-29, 829 P.2d 561 (1992).

The plaintiffs concede that our Supreme Court rejected similar constitutional challenges to the damages caps in *Samsel* and *Leiker*.

The plaintiffs suggest these cases were wrongly decided and should be revisited.

The *amici* briefs also urge the continued constitutionality of the statutory caps on damages, setting forth public policy arguments in favor of the caps.

We need not go further in an analysis of the issues. This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Buchanan v. Overley*, 39 Kan. App. 2d 171, 175-76, 178 P.3d 53, *rev. denied* 286 Kan. 1176 (2008). As of this date, *Samsel* and *Leiker* remain good law and control as to the constitutional issues presented in this appeal, although they have been disapproved of or superseded by statute on other grounds. See *Bair*, 248 at 841, 844 (*Samsel* disapproved in part); *Martindale*, 250 Kan. at 628-29 (*Leiker* disapproved in part); *Glassman v. Costello*, 267 Kan. 509, 523, 986 P.2d 1050 (1999) (*Leiker* superseded by statute in part on other grounds). Accordingly, we conclude the trial court did not err in ruling that the statutory caps on damages are constitutional.

We do wish to briefly comment regarding the separation of powers issue raised by the plaintiffs who contend it is within the exclusive province of the judiciary to grant remittitur and that imposition of statutory caps is an impermissible encroachment on judicial power. We do not agree and hold imposition of the statutory caps on damages is not a form of remittitur or an infringement on the Supreme Court's rulemaking powers. Instead, through its enactments, the legislature decided the maximum amount of nonpecuniary damages recoverable in personal injury litigation. In *Samsel*, the court stated:

"Our constitution provides that the common-law right to a jury trial includes the right to have the jury determine the amount of the damages in personal injury actions. An individual does not, however, have a vested right in the common-law rules governing negligence actions. The legislature can modify the right to a jury trial and the right of a jury determination of the amount of damages through its power to change the common law, but the legislature's right is not absolute. Statutory modification of the common law must meet due process requirements and be reasonably necessary in the public interest to promote the general welfare of the people of the state. Due process requires that the legislature substitute the

viable statutory remedy of quid pro quo (this for that) to replace the loss of the right. [Citation omitted.]" 246 Kan. at 358.

Consequently, we conclude the plaintiffs' separation of powers argument leads us right back to *Samsel* and *Lieiker*, and the rationale of those cases continues to uphold the constitutionality of the statutory caps on damages.

### Are Plaintiffs Entitled to Prejudgment Interest?

The plaintiffs assert the prejudgment interest award was proper because the parties knew the least amount due on plaintiffs claims following the verdict would be $1,000,000. However, that circumstance does not mean the amount due and owing was $1,000,000 when the trial court ruled prejudgment interest was to commence.

In Kansas, prejudgment interest is generally allowable on liquidated claims, *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925, 157 P.3d 1109 (2007), pursuant to the provisions of K.S.A. 16-201: "Creditors shall be allowed to receive interest at the rate of ten percent per annum . . . for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance."

Here, the trial court erred because the verdict was for unliquidated damages regardless of the application of statutory caps. K.S.A. 60-258 provides in material part that "[n]o judgment shall be effective unless and until a journal entry of judgment or judgment form is signed by the trial judge and filed with the clerk of the court." In *McGuire v. Sifers*, 235 Kan. 368, Syl. ¶ 9, 681 P.2d 1025 (1984), the court also clarified that "[w]ithout a journal entry of judgment or judgment form as prescribed by K.S.A. 60-258, there was no judgment on any issue. *It is error to allow interest on a verdict for unliquidated damages for the time between its finding and rendition of the judgment thereon.*" (Emphasis added.)

Affirmed in part and reversed in part.