NOT DESIGNATED FOR PUBLICATION

No. 126,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NATHAN DICK and SUSAN DICK,
*Appellees*,

v.

REWELL, LLC,
*Appellant*.


MEMORANDUM OPINION

Appeal from Butler District Court; CHAD M. CRUM, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed.

*Reece D. Hiebert*, of Adrian & Pankratz, P.A., of Newton, for appellant.

*Susan M. Locke*, of Adams Jones Law Firm, P.A., of Wichita, for appellees.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: ReWell, LLC (ReWell), appeals after the district court, in a bench trial, granted Nathan and Susan Dick's quiet title action and denied ReWell's counterclaims for an easement allowing it to use a residential sewage lagoon on the Dicks' property. ReWell's easement counterclaims consisted of three theories: (1) easement by prescription, (2) implied easement by reservation or grant, and (3) implied easement by necessity. The district court rejected all three types of claims.

On appeal, ReWell argues the district court erred in denying its easement counterclaims and claims the court abused its discretion when it prevented ReWell from

1

presenting evidence that it adversely possessed a piece of the Dicks' property unrelated to the lagoon. Ultimately, we affirm the district court's decision because ReWell fails to show the district court arbitrarily disregarded undisputed evidence or relied on extrinsic considerations when it denied ReWell's easement counterclaims, and ReWell fails to show the district court abused its discretion when it prevented ReWell from presenting evidence unrelated to the issues raised in the pleadings and pretrial order.

FACTUAL AND PROCEDURAL BACKGROUND

Nathan and Susan Dick own a parcel of land in El Dorado that they purchased in 2022, intending to build a new house for their family. ReWell owns an adjoining parcel of land, which it rents—along with the house on it—to tenants.

At the heart of this dispute is a residential sewage lagoon located on the Dicks' parcel but used solely by ReWell's parcel. The Dicks plan to use the lagoon for the home they aim to build on their parcel. However, the lagoon in its current state cannot serve two residences without a zoning variance. The lagoon issue led the Dicks to file this action to quiet title on May 10, 2022.

This appeal requires some understanding of the history of the two properties. At one time, the two properties were part of a single, L-shaped tract of land dubbed "Martin Acres," after its purchase by Dennis and Yvonne Martin in 1991. In 1998, the property was asymmetrically divided into Lot 1 and Lot 2. At some point, sometime prior to 1991, the properties had separate septic systems, and each lot had a residence.

The Martins sold Lot 1—now ReWell's parcel—to Floyd and Elizabeth Young in 1998. At that time, Lot 1 was connected by a sewer line to the lagoon located on Lot 2. On Lot 2 there was still a house, occupied by the Martins until 2000. Elizabeth Young

2

testified that her understanding was that both parcels used the lagoon, as the Martins had intended when they severed the lots.

The exact date of the lagoon's construction is unknown, and neither parcel's chain of title includes a recorded easement regarding the use of the lagoon. Aerial photographs and witness testimony indicate that it must have been built sometime between 1991 and 1998. Prior to the lagoon's construction, Lot 1 (ReWell's parcel) utilized a septic tank connected to a lateral field, where the affluent was absorbed into the ground.

In 2006, the Youngs conveyed Lot 1 to Chad and Denise Dean. The Youngs told Chad about the sewer connection to the lagoon before he purchased the parcel. Chad testified he never received explicit permission from any of the previous or current owners of the Dicks' parcel to use the lagoon. At the same time, Chad testified he believed his use of the lagoon was known to the owners of the Dicks' parcel. In 2022, Chad conveyed Lot 1 to his company, ReWell, LLC.

Today, Lot 1 remains ReWell's parcel. When Chad purchased the ReWell parcel, there was an existing house there, which ReWell rents to tenants. While there have been times where no tenant has occupied the parcel, ReWell maintained the sewer line to the lagoon and never disconnected it. No other properties use the sewer line connecting the ReWell parcel to the lagoon.

Meanwhile, Lot 2 was further divided, becoming what is now the Dicks' parcel and a third parcel not at issue in this case. The house on the Dicks' parcel was destroyed at some point, but its foundation remains intact.

The Dicks' parcel passed to Matthew and Marilyn Jacobs, who owned it from 2015 to 2022. At the time of purchase, Matthew was unaware of the lagoon's use by ReWell's parcel. A county official brought it to his attention when he reached out to ask about an

unrelated easement on the property. After learning this, Matthew had a few conversations with Chad about the lagoon. In these conversations, Matthew said Chad would have to stop using the lagoon once the Jacobs built a house on the Dicks' parcel. As Matthew understood it, he would need to terminate the neighboring property's use of the lagoon if he ever built a residence on his property. He also believed the neighboring parcel used the lagoon with his implied permission and that Chad did not claim possession of it.

The Jacobs never had any disputes with their neighbors over the lagoon. However, they discussed the dividing line between their parcel and ReWell's parcel with one of ReWell's tenants. Specifically, the Jacobs discussed a trapezoidal section of land in the southeast corner of their property that juts into the front yard of ReWell's parcel. Although a fence separates this trapezoid of land from its parcel, ReWell's tenant persuaded the Jacobs not to modify the fence line. Even so, the Jacobs continued to mow and maintain the trapezoid of land to ensure the neighbors were clear about its ownership and even got ReWell's tenant to move a storage container he once placed on the trapezoid of land.

In 2022, the Jacobs conveyed their parcel to the Dicks. The Dicks bought the property planning to build a home there. When they purchased the property, there was no easement recorded for a shared septic system or shared use of the lagoon. However, the Jacobs disclosed ReWell's use of the lagoon before the Dicks purchased the parcel.

Butler County allows property owners to use any private disposal system lawfully installed before the sanitation code's enactment for domestic sewage, so long as there is no need for alteration, enlargement, repair, or improvement. But according to the Director of Community Development for Butler County, the lagoon in its present state is likely too small to support two houses and would need to be enlarged.

4

Rather than significantly alter the preexisting septic system, the Dicks filed this quiet title action to cease ReWell's use of the lagoon. ReWell's answer asserted counterclaims arguing that it had an easement to use the lagoon—by prescription, implication, or necessity.

As the case progressed, the parties outlined their contentions and stipulations in the pretrial order. The stipulated facts included the Dicks' purchase of their property from the Jacobs in 2022 and the absence of any recorded easements granting use of the property to ReWell. The parties also stipulated that the Dicks own their parcel and satisfied their burden to quiet title. The pretrial order's description of the Dicks' parcel includes the trapezoid of land that Matthew discussed with ReWell's tenant. Because the parties stipulated to the Dicks' quiet title claim, the bench trial commenced with ReWell's easement counterclaims.

At trial, Chad testified that ReWell does not claim ownership of the lagoon itself, but only the sewer line connecting ReWell's parcel to the lagoon. He also opined that his continued use of the lagoon is necessary because it could cost several thousand dollars to establish a new sewage system for his property. While Chad admitted there is still a septic tank on his property, he said the tank is not connected to any lateral lines and merely holds sewage and connects directly to the lagoon.

Witnesses for both parties testified the septic tank on ReWell's parcel could be disconnected from the lagoon and used in an alternative septic system. ReWell's parcel is large enough for the septic tank to be routed to a new lagoon or lateral field. With county approval, it could even function on its own as a holding tank that would require pumping when at capacity. Yet ReWell's options may be limited by the septic tank's proximity to the property line.

When ReWell rested its case, it reserved the right to call rebuttal witnesses. The Dicks moved for a directed verdict, which the district court denied.

Nathan then testified that, based on the 1991 plat of Martin Acres, he is the owner of the trapezoid of land in the southeast corner of his parcel that lies along the border with ReWell's parcel, even though the trapezoid of land is separated from the rest of the Dicks' parcel by a fence. His claim on this trapezoid of land is consistent with the 1991 plat of Martin Acres and the legal description of the Dicks' parcel.

Shortly after Nathan's testimony about the trapezoid of land, ReWell moved to revoke its stipulation to the Dicks' quiet title action. The district court allowed ReWell to revoke the stipulation. But after a few questions on cross-examination concerning ownership of the land in question, the district court sustained an objection for relevance as to the easement claim, stating that the line of testimony was not contemplated in the pretrial order. ReWell requested the issue of quiet title as to the southwest portion of the Dicks' property be set for a future hearing. The district court denied ReWell's request.

After the Dicks rested their case, ReWell had the opportunity to call rebuttal witnesses. ReWell then attempted to call Chad back to the stand to testify about the disputed trapezoid of land. The Dicks objected to the relevance of this testimony. After reviewing the pleadings and pretrial order, the district court determined only the existence of an easement was at issue and testimony concerning the property division would go beyond the scope of the case. The district court sustained the Dicks' objection. In response, ReWell rested its case and the parties proceeded to closing arguments.

Before its closing argument, ReWell moved for a mistrial because the district court prevented it from presenting evidence regarding the trapezoid of land. The district court denied this request. After closing arguments, the district court issued its oral ruling.

Concerning the prescriptive easement counterclaim, the district court found that ReWell's use of the sewer line to the lagoon was open, exclusive, and continuous for a period of 15 years. However, the district court found that ReWell's use of the lagoon was not knowingly adverse or under a belief of ownership. Accordingly, the district court determined ReWell did not have a prescriptive easement for possession or use of the lagoon.

As for the easement by implication counterclaim, the district court found that, at the time the parcels were severed, the sewer line connecting ReWell's parcel to the lagoon existed and continued shared use of the lagoon by the two parcels was contemplated, so long as that continued shared use was reasonable. Because the lagoon cannot now serve both parcels without a zoning variance, the district court determined that continued use of the lagoon by ReWell's parcel is no longer reasonable. And the district court found that ReWell's use of the lagoon was not reasonably necessary because ReWell had other septic options available. As a result, the district court denied ReWell's counterclaim for an easement by implication.

The district court also denied ReWell's claim for an implied easement by necessity. It reached this conclusion after finding that ReWell's parcel is large enough to host its own lagoon or lateral field and already has a septic tank which could connect to an alternative septic system or function on its own as a holding tank. While ReWell may incur expenses installing an alternative septic system, the district court found continued use of the lagoon by ReWell's parcel is not strictly necessary.

Finally, the district court granted quiet title to the Dicks as to their parcel, as described in the legal description found in their petition. This included the trapezoid of land in the southeast corner of the parcel.

7

ReWell now appeals.

ANALYSIS

ReWell asks us to determine whether the district court erred when it denied its alternative counterclaim theories claiming an easement and prevented ReWell from presenting evidence of its alleged adverse possession of the trapezoid of land. We have jurisdiction over this matter under K.S.A. 60-2102(a)(4), and ReWell preserved each of its challenged issues by raising them before the district court. We address each claim in turn.

I.    *The District Court Did Not Err in Determining that an Easement by Prescription Did Not Exist*

ReWell first argues the district court erred when it denied its claim of an easement by prescription for its continued use of the lagoon system. ReWell claims the district court misinterpreted the standard for determining whether its use of the lagoon was adverse and disregarded evidence suggesting it adversely used the lagoon.

A.    *Applicable Legal Standards*

The existence of a prescriptive easement is a question of fact reviewed for substantial competent evidence of a clear and convincing quality. *Brownback v. Doe*, 44 Kan. App. 2d 938, 942, 241 P.3d 1023 (2010). The district court's conclusions of law based on factual findings are generally subject to unlimited review. See *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017).

Here, the district court made negative findings of fact—that ReWell's use was neither knowingly adverse nor under any belief of ownership. A negative finding occurs

8

when a district court finds that a party failed to meet its burden of proof. Appellate courts reviewing a negative finding will uphold it unless the challenging party proves the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *State v. Douglas*, 309 Kan. 1000, 1002-03, 441 P.3d 1050 (2019). This deferential standard applies only to negative findings of fact, not merely any ruling adverse to a party bearing the burden of proof or purely legal determinations. See *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009).

While conducting this review, "'an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact.'" *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 325, 255 P.3d 1186 (2011) (quoting *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 [2009]). "Rather, the appellate court should review the facts of the case in the light most favorable to the prevailing party below to ascertain whether the trial court's decision is properly supported by substantial competent evidence." *In re Adoption of J.M.D.*, 293 Kan. 153, 171, 260 P.3d 1196 (2011). Put differently, "appellate review of factual questions should accord a great deal of deference to the trial judge's determination, even in those instances where the appellate jurists might have decided the case differently." 293 Kan. at 171.

B.     *ReWell's Use of the Lagoon Was Not Knowingly Adverse or Under a Belief of Ownership*

ReWell claims "more than sufficient facts demonstrate a claim of right for [its] continued use of [the] lagoon system . . . ." Despite this confident assertion, its brief identifies no specific evidence supporting its claim that its use of the lagoon was adverse or under a belief of ownership. ReWell also argues the district court disregarded "the definitional difference between actual adverse possession and prescriptive easement . . . ." Yet ReWell fails to elucidate what that definitional difference may be.

It is true that Kansas courts have long conflated the doctrines of adverse possession and prescriptive easement. See *Stramel v. Bishop*, 28 Kan. App. 2d 262, 264, 15 P.3d 368 (2000) ("Kansas cases have indicated that courts use the adverse possession statute, K.S.A. 60-503, to determine if the elements of a prescriptive easement are present."). However, the Kansas Supreme Court recently cautioned that these doctrines are distinct and subject to their respective analyses. *Pyle v. Gall*, 317 Kan. 499, 503-04, 531 P.3d 1189 (2023).

In *Pyle*, the Kansas Supreme Court listed five elements necessary to establish a prescriptive easement in Kansas: "use of a private way that is (1) open; (2) exclusive, meaning unique to the prescriptor; (3) continuous; (4) for a set prescriptive period; and (5) adverse." 317 Kan. at 503. An adverse use is "a use made without the consent of the landowner, or holder of the property interest used, and without other authorization." Restatement (Third) of Property: Servitudes § 2.16, comment b (2000).

> "'A prescriptive right to a private way . . . must not only be continued for the requisite period, but it must be adverse, and under a claim of right, and must be exclusive and uninterrupted; and all this with the knowledge and against the consent of the owner of the estate out of which the easement is claimed; reasonable opportunity for knowledge on his part being accounted to him for such knowledge. If one claiming an easement has been occupying an estate for the given period with the consent of the owner, this does not constitute adverse possession, but is simply a license so to do, out of which an estate by prescription can never arise.'" 317 Kan. at 502 (quoting *Fiest v. Steere*, 175 Kan. 1, 5-6, 259 P.2d 140 [1953]).

On our review of the record, the district court did not arbitrarily disregard undisputed evidence or rely on extrinsic considerations to conclude ReWell's use of the lagoon was not knowingly adverse. The only evidence supporting ReWell's adverse use of the lagoon was Chad's testimony that he never received explicit permission to use the lagoon from the owners of the Dicks' parcel. However, Matthew's testimony indicated

ReWell used the lagoon with his implied permission from 2015 to 2022. Matthew also testified he had informed Chad that his use of the lagoon would need to cease once a house was constructed on the Dicks' parcel. Based on this evidence, the district court found that ReWell's use of the lagoon was not knowingly adverse because Matthew never withheld permission even though the use was open and known by both parties.

If the Jacobs did not withhold permission to use the lagoon under these circumstances, then there can be no easement by prescription, even though ReWell never received explicit permission to use the lagoon. A permissive use can never ripen into an easement. See *Brady Fluid Svc., Inc. v. Jordan*, 25 Kan. App. 2d 788, 794, 972 P.2d 787 (1998); see also *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 679, 157 P.2d 805 (1945) ("'[U]se by express or *implied permission* or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking.'" [Emphasis added.]) (quoting 17 Am. Jur., Easements § 67).

The district court also did not err in determining ReWell did not use the lagoon under a belief of ownership. Chad's own testimony revealed ReWell did not claim any ownership of the lagoon. ReWell only believed it owned the sewer line connecting its parcel to the lagoon. Chad was also told by Matthew that he would have to cease using the lagoon once a house was built on the Dicks' parcel. This evidence suggests ReWell did not believe it owned the lagoon, and ReWell fails to identify evidence to the contrary.

ReWell fails to convince us the district court arbitrarily disregarded undisputed evidence or relied on extrinsic considerations when it determined an easement by prescription did not exist. Chad's and Matthew's testimonies support the district court's finding that ReWell's use of the lagoon was neither knowingly adverse nor under a belief of ownership.

II.     *The District Court Did Not Err in Determining an Implied Easement by*
        *Reservation or Grant Did Not Exist*

ReWell next argues the district court erred when it denied ReWell's claim for an easement by implication because it misinterpreted the scope and burden of the easement.

The district court found the lagoon was jointly used by the two parcels under the Martins' ownership. Based on the circumstances, the district court found that the Martins contemplated that the lagoon would serve both parcels. However, the district court also found that use of the lagoon by both parcels is now impossible without a zoning variance. And the district court found that ReWell's continued use of the lagoon is not reasonably necessary to its enjoyment of its parcel because there are other septic options available to it. Because ReWell's exclusive use of the lagoon today does not comply with the shared use of the lagoon contemplated by the Martins at severance and is not necessary for the reasonable enjoyment of its parcel, the district court denied ReWell's claim for an implied easement to use the lagoon.

Using the same standards of review as in the prior section, we address ReWell's second claim.

A.      *ReWell's Continued Use of the Lagoon Goes Beyond the Intent of the*
        *Parties at the Time of Severance*

Implied easements exist for times when the parties did not think to include the easements in the conveyance of property. An implied easement may be created by reservation or grant, as discussed in this section, or by necessity, as discussed in the next section. *Smith v. Harris*, 181 Kan. 237, 247-48, 311 P.2d 325 (1957). Here the parties and district court refer to implied easements by reservation or grant as implied easements by implication, but the concept is the same.

An implied easement by a reservation or grant requires several factors. *DeBey v. Schlaefli*, 56 Kan. App. 2d 813, 817, 437 P.3d 1011 (2019). A landowner must use his or her land in such a way that part of that land gives a benefit of a "'continuous, permanent, and apparent nature'" to another part of the land. *Smith*, 181 Kan. at 248. This is typically called a quasi-easement. The part of the land giving the benefit—here the portion of the Martins' original property now the Dicks' parcel—is known as the quasi-servient tenement. The part of the land receiving the benefit—that portion of the Martins' original property which became ReWell's parcel—is known as the quasi-dominant tenement. "When the landowner sells the quasi-dominant tenement, the quasi-easement then becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property." *DeBey*, 56 Kan. App. 2d at 818.

The Kansas Supreme Court has cautioned against confusing "'necessary'" in an implied easement by reservation or grant with an implied easement by necessity. *Smith*, 181 Kan. at 249; see 56 Kan. App. 2d at 818.

> "An implied easement from a way of necessity is based on strict necessity, but strict necessity is not required in an implied easement by reservation or grant. Instead, an implied easement by reservation or grant is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land." 56 Kan. App. 2d at 818.

Generally, parties intend to continue using the land in the same way known to them to "a *considerable degree necessary to the continued usefulness of the land*." *Smith*, 181 Kan. at 249. Additionally, "[t]he parties will be assumed to know and to contemplate the continuance of *reasonably necessary* uses which have so altered the premises as to make them apparent upon reasonably prudent investigation." 181 Kan. at 249.

Here, the district court found no implied easement allows ReWell to use the lagoon because its exclusive use of the lagoon does not comply with the shared use of the

13

lagoon contemplated by the Martins at severance and is not necessary for the reasonable enjoyment of its parcel. ReWell disagrees, claiming its exclusive use of the lagoon is within the scope of the easement. It argues the scope of the easement "is based on what the dominant estate reasonably expects to be able to do." But ReWell does not convincingly support its interpretation of the law. The scope of an implied easement

> "'is to be measured rather by such uses as the *parties* might reasonably have expected from the future uses of the dominant tenement. What the *parties* might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement.'" (Emphases added.) *Stroda v. Joice Holdings*, 288 Kan. 718, 724, 207 P.3d 223 (2009) (quoting Restatement [First] of Property § 484, comment b [1944]).

The Restatement's use of the plural term "parties" suggests that an implied easement's scope is not unilaterally determined by the dominant estate, but jointly determined by both estates when the property is severed. Here, no evidence suggests the Martins and the families who purchased the parcels reasonably expected the lagoon to exclusively serve ReWell's parcel. Such an easement would burden the Dicks' parcel with sewage from ReWell's land without any access to a septic system of its own. This hardly seems reasonable where the Dicks' parcel had a residence at the time of severance and must have been intended for residential use. Rather, the circumstances suggest that the parties intended for the parcels to share the lagoon. The district court did not arbitrarily disregard undisputed evidence or rely on extrinsic considerations when it found the same.

B.  *ReWell's Continued Use of the Lagoon Is Not Reasonably Necessary to Its Enjoyment of Its Parcel*

The district court also found that ReWell's continued use of the lagoon is not reasonably necessary to its enjoyment of its parcel because there are other septic options

14

available to it. Since an implied easement is retained only if it is necessary for the continued reasonable enjoyment of the property, the district court found there is no implied easement allowing ReWell's parcel to use the lagoon.

An analogous case on this point is *Grimmett v. Luellen*, No. 115,870, 2017 WL 3203343 (Kan. App. 2017) (unpublished opinion). There, the dominant estate—a four-unit mobile home park—claimed an implied easement by reservation or grant for a water meter and lines located on the adjacent subservient estate. When the use began there was a unity of title and a subsequent severance of the parcels. From that point on, the dominant estate continuously used the water meter and lines on the subservient estate. However, the district court found that there was no easement by implication for the water meter and lines. This decision was based on the dominant estate's inability to present a viable reason why an implied easement would be necessary. Nothing prevented the dominant estate from installing its own water meter and lines. Without evidence of the easement's necessity, this court determined the district court's finding was not tainted by the arbitrary disregard of undisputed evidence or extrinsic considerations. 2017 WL 3203343, at *5.

As in *Grimmett*, the evidence here did not show an implied easement was necessary. ReWell's parcel has other available septic options, including a septic tank that could operate as a holding tank or connect to a lateral field. Additionally, testimony suggested ReWell's parcel is likely large enough and topographically suitable to host its own lagoon. Because it is not necessary for ReWell's parcel to use the lagoon, any quasi-easement that existed at the time of severance was not retained as an implied easement after the Martins sold the parcels.

The district court did not arbitrarily disregard undisputed evidence or rely on extrinsic considerations when it determined that an implied easement by reservation or grant did not exist. And, the record supports the district court's findings that the parcels

15

were intended to share the lagoon, ReWell's exclusive use of the lagoon does not comply with that intent, and ReWell's use of the lagoon is not reasonably necessary due to the availability of alternative septic options.

III.    *The District Court Did Not Err in Determining an Implied Easement by Necessity Did Not Exist*

In ReWell's third argument, it claims the district court erred when it denied the claim for an easement by necessity because the district court applied the wrong standard to determine whether it was strictly necessary for ReWell's parcel to use the lagoon.

The district court determined that ReWell's use of the lagoon was not strictly necessary, so it denied the claim for an implied easement by necessity. This conclusion was based on the district court's following findings:  ReWell's parcel had a septic system before the lagoon's construction, is large enough to host an alternative septic system, and already has a septic tank that can be used without the lagoon.

Again, the same standards of review apply to this issue as to the two previous ones, and we apply them to this question.

A.    *The District Court Did Not Misinterpret the Standard for an Implied Easement by Necessity*

ReWell now argues the district court misinterpreted the standard for an implied easement by necessity. According to ReWell, "the standard of necessity must be implied in favor of the dominant property" because the Martins sold the dominant parcel—now owned by ReWell—and retained the subservient parcel—now owned by the Dicks. In support of this argument, ReWell relies on the following description of an implied easement by necessity:

16

"'The implication of easements of necessity is an application of the rule that wherever one conveys property he also conveys whatever is *necessary for its beneficial use and enjoyment*, and retains whatever is *necessary for the use* of the land retained. The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and the circumstances surrounding the transaction; the implication will not be made where it is shown that the parties did not intend it. A way of necessity will be implied more readily in favor of the grantee than in favor of the grantor.'" *Smith*, 181 Kan. at 248 (quoting 28 C.J.S., Easements § 35).

ReWell misinterprets the *Smith* court's explanation of the legal fiction underlying implied easements. In the above excerpt, the court does not state that necessity is presumed when the original owners of the property sell the dominant parcel and retain the subservient parcel. Rather, the court explains the mechanism by which an easement by necessity can be created, without an express agreement, through the inferred intent of the parties. Other cases confirm that when the existence of an easement is in contention, the burden rests on the party claiming the easement. See *Garden City Company v. Bentrup*, 228 F.2d 334, 341 (10th Cir. 1955); *Fiest*, 175 Kan. at 6; *Miessler v. Solida & Sons Tree Service, Inc.*, No. 94,352, 2006 WL 2465508, at *3 (Kan. App. 2006) (unpublished opinion).

Here, as previously discussed, evidence supported a finding that the implied intent of the parties was for the residences of both parcels to share use of the lagoon so long as it was reasonably possible to do so. An implication that, simply because ReWell sits on the dominant property, the use of the lagoon was intended solely for its parcel's benefit, would be inappropriate.

And, as discussed in the section on implied easements by reservation or grant, an "implied easement arising from a 'way of necessity' is founded upon *strict necessity*." *Smith*, 181 Kan. at 249 (citing *Van Sandt v. Royster*, 148 Kan. 495, 83 P.2d 698 [1938]).

17

Strict necessity requires more than mere convenience. If the claimant can obtain a means of access at a reasonable expense without entering the neighboring property, no implied easement by necessity exists. *Horner v. Heersche*, 202 Kan. 250, 255, 447 P.2d 811 (1968).

Because ReWell failed to prove necessity for enjoyment in its claim for an implied easement by reservation or grant, it likewise cannot meet the higher burden of strict necessity required for an implied easement by necessity. Alternative septic options are available to ReWell, which it claims are unreasonably expensive. But despite this claim, ReWell fails to show how the district court arbitrarily disregarded evidence or relied on extrinsic considerations when it found that the burden of establishing a new septic system is not enough to raise its use of the lagoon to the level of strict necessity.

The district court applied the correct standard to determine ReWell's use of the lagoon was not strictly necessary, and it did not reach this conclusion by arbitrarily disregarding undisputed evidence or relying on extrinsic considerations.

IV.    *The District Court Did Not Err by Preventing ReWell from Presenting Evidence on a New Counterclaim*

In ReWell's final argument, it claims the district court erred when it prevented ReWell from presenting evidence of its ownership through adverse possession of the trapezoid of land along the border of the two parcels.

At the outset, the Dicks commenced this action through a quiet title claim. The petition's description of the Dicks' parcel included the trapezoid of land along the border between the two parcels. ReWell then counterclaimed for an easement permitting use of the lagoon under the three theories discussed above and stipulated to the Dicks' quiet title claim in the pretrial order.

18

At trial, after ReWell presented evidence on its easement counterclaims, it rested its case. Midway through the Dicks' case, ReWell moved to revoke its stipulation to the quiet title, which the district court allowed. After the Dicks rested their case, the district court asked ReWell if it would like to call any additional witnesses. ReWell tried to call Chad back to the stand to offer testimony regarding the trapezoid of property along the border between the two parcels. The Dicks objected to the relevancy of this testimony. The district court sustained the objection after reviewing the pleadings and finding that the only counterclaims and issues of fact raised by ReWell pertained to the use of the lagoon. ReWell now appeals the district court's ruling.

A. *Applicable Legal Standards*

We review whether the district court erred in refusing to permit a party to reopen a case to introduce additional evidence for an abuse of discretion. *Gannon*, 305 Kan. at 868. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). As the party asserting the district court abused its discretion, ReWell bears the burden of showing such abuse. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

B. *The District Court Did Not Abuse Its Discretion When It Prevented ReWell from Presenting Evidence that Was Only Relevant to a Novel Counterclaim*

The Dicks argue that ReWell's failure to proffer the substance of its proposed evidence is fatal to its claim. It is well-settled that "'a party may not assert error based upon the erroneous exclusion of evidence in the absence of a proffer of that proposed evidence.'" *McGinnes v. Wesley Medical Center*, 43 Kan. App. 2d 227, 238, 224 P.3d 581 (2010). See K.S.A. 60-405. But a formal proffer is not required if the record sufficiently reveals the substance of the proposed evidence. "Failure to make an adequate proffer of

19

excluded evidence precludes appellate review because the appellate court has no basis to consider whether the district court abused its discretion." 43 Kan. App. 2d at 238.

At trial, counsel for ReWell stated simply that Chad would have offered testimony related to the "portion of the property" on the Dicks' land and why the Dicks should not be permitted to quiet title. This is likely an inadequate proffer because it reveals only the subject of Chad's testimony while the substance of his testimony (what about the piece of land?) remains elusive. It is impossible to divine from the record what Chad would have said about the disputed portion of land. Without an adequate proffer of the excluded evidence, ReWell's claim of error should fail, because we lack a basis to consider whether the district court abused its discretion. See *McGinnes*, 43 Kan. App. 2d at 236-39 (in a medical malpractice case, both the district court and appellate court rejected expert witness evidence, finding while the *subject* of the expert witness' testimony—the dilation of the bile duct—was revealed by the record, the *substance* of the testimony—the actual measurement of the bile duct—was neither proffered by the defendant nor revealed by the record).

But even if we were to consider ReWell's proffer on its merits, its claim still fails. Through its request to offer evidence, ReWell sought to assert a novel counterclaim, unrelated to the lagoon and without basis in the pretrial order, in the middle of trial. It is within the district court's discretion to enforce the provisions of the pretrial order and prevent a party from asserting a counterclaim at trial.

Under K.S.A. 2023 Supp. 60-213(e), the district court may "permit a party to file a supplemental pleading asserting a counterclaim that *matured or was acquired by the party after serving an earlier pleading*." (Emphasis added.) See *First Nat'l Bank v. Milford*, 239 Kan. 151, 159, 718 P.2d 1291 (1986). "[T]his court has long been committed to the rule that it is discretionary whether a trial court may permit a party to reopen a case to introduce additional evidence, and our decisions approve that practice

20

where the record fails to disclose conduct amounting to abuse of discretion." *Westamerica Securities, Inc. v. Cornelius*, 214 Kan. 301, 306, 520 P.2d 1262 (1974) (citing *Anderson v. Berg*, 202 Kan. 659, 661-62, 451 P.2d 248 [1969]; *In re Estate of Cox*, 184 Kan. 450, 452, 337 P.2d 632 [1959]; *In re Estate of Wittman*, 161 Kan. 398, 402-03, 168 P.2d 541 [1946]).

Additionally, the district court has wide discretion to enforce the provisions of the pretrial order. Under K.S.A. 2023 Supp. 60-216(d) and (e), a pretrial order controls the subsequent course of the action, unless modified at the time of trial to prevent manifest injustice. The district court abuses its discretion only when no reasonable person would take the view adopted by the court. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 141-42, 815 P.2d 72 (1991).

ReWell does not suggest its adverse possession counterclaim matured or was acquired after it filed its answer or after the district court entered the pretrial order. From the record, this court can infer that whatever basis ReWell had to claim adverse possession of the trapezoid of land existed at the outset of this litigation. In fact, trial testimony indicates the trapezoid of land was a topic of discussion between landowners and at least one of ReWell's tenants well before the Dicks filed their lawsuit. K.S.A. 2023 Supp. 60-213(e) only permits a party to assert counterclaims that matured or were acquired after serving an earlier pleading. Accordingly, the district court did not abuse its discretion when it prevented ReWell from making a counterclaim it could have asserted in the earlier pleadings.

For these reasons, ReWell's final argument on appeal is also unavailing. The district court did not abuse its discretion when it prevented ReWell from presenting evidence that was only relevant to a novel counterclaim absent from the pleadings. The district court's actions were consistent with the pleadings and pretrial order. ReWell fails to explain how the decision not to deviate from those filings was an abuse of discretion.

21

Affirmed.